UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
ROSALY RAMIREZ, KATHERINE BELL, LORNA
THOMAS, LINDA WILLIAMS and JONATHAN
FRIAS, on behalf of themselves and all others similarly
situated,                                                                                  Index No.: 13-cv-2367 (JGK)

                                      Plaintiffs,

        v.

RIVERBAY CORP., MARION SCOTT REAL ESTATE, INC.,
VERNON COOPER, and PETER MEROLA
                                      Defendants.
-------------------------------------------------------------------------x


## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION


                                      TRIVELLA & FORTE, LLP
                                      JONATHAN BARDAVID (JB 0072)
                                      *Attorneys for Defendants*
                                      1311 Mamaroneck Avenue, Suite 170
                                      White Plains, New York 10605
                                      Tel. No.:  (914) 949-9075

## **TABLE OF AUTHORITIES**

Cases

Babineau v. Fed. Exp. Corp., 576 F.3d 1183, 1191 (11th Cir. 2009).........................10, 16, 17, 18

Basco v. Wal-Mart Stores, Inc., 216 F. Supp. 2d 592, 603 (E.D. La. 2002) ................................21

Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013) ...............................................15, 21, 22

Cornn v. United Parcel Serv., Inc., C03-2001 TEH, 2005 WL 2072091 (N.D. Cal. Aug. 26, 2005) ...............................................................................................................................................16

Eldred v. Comforce Corp., 3:08-CV-1171 LEK/DEP, 2010 WL 812698 (N.D.N.Y. Mar. 2, 2010) .....................................................................................................................................................8

Fernandez v. Wells Fargo Bank, N.A., 12 CIV. 7193 PKC, 2013 WL 4540521 (S.D.N.Y. Aug. 28, 2013) reconsideration denied, 12 CIV. 7193 PKC, 2013 WL 5912158 (S.D.N.Y. Nov. 1, 2013) .....................................................................................................................................15, 21

Floyd v. City of New York, 283 F.R.D. 153, 160 (S.D.N.Y. 2012).................................................7

Jacob v. Duane Reade, Inc., 293 F.R.D. 578, 588-89 (S.D.N.Y. 2013) .................................21, 22

Lupien v. City of Marlborough, 387 F.3d 83 at 88 (1st Cir. 2004) ................................................23

Marisol A. by Forbes v. Giuliani, 126 F.3d 372, 376 (2d Cir.1997) ...............................................8

Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir.2002) ................................................15

Myers v. Hertz Corp., 624 F.3d 537, 547-48 (2d Cir. 2010) .........................................................15

Paz v. Piedra, 09 CIV. 03977 LAK, 2012 WL 121103 (S.D.N.Y. Jan. 12, 2012) .........................9

Reich v. New York City Transit Auth., 45 F.3d 646, 651 (2d Cir. 1995) ......................................19

Romero v. H.B. Auto. Grp., Inc., 11 CIV. 386 CM, 2012 WL 1514810 (S.D.N.Y. May 1, 2012) .....................................................................................................................................................11

Seever v. Carrols Corp., 528 F. Supp. 2d 159, 163, fn. 2 (W.D.N.Y. 2007)...................................9

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201–02 (2d Cir. 2008) ......................................................................................................................................7

Tracy v. NVR, Inc., 293 F.R.D. 395, 400 (W.D.N.Y. 2013)..........................................................21

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)..................8, 11

Webb v. Merck & Co., 206 FRD 399, 408 (E.D.N.Y 2002) ..........................................................23

White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012) cert. denied, 134 S. Ct. 296, 187 L. Ed. 2d 153 (2013) .............................................................................................20

Zaniewski v. PRRC Inc., 848 F. Supp. 2d 213, 220 (D. Conn. 2012)..............................................7

Zivali v. AT & T Mobility, LLC, 784 F. Supp. 2d 456, 469 (S.D.N.Y. 2011) .............................20

Statutes

29 U.S.C. § 203(g) ...........................................................................................................................9

Rules

Fed. R. Civ. P. 23(b)(3) ....................................................................................................................7

Regulations

29 C.F.R. § 785.48............................................................................................................................9

29 C.F.R. § 785.48(a) .....................................................................................................................10

**PRELIMINARY STATEMENT**

Defendants Riverbay Corporation, Marion Scott Real Estate Inc., Mr. Vernon Cooper and Mr. Peter Merola, (hereinafter collectively the "Defendants") submit this Memorandum of Law in opposition to the motion of Rosaly Ramirez, Jonathan Frias, Lorna Thomas, Linda Williams and Katherine Bell (collectively "Named Plaintiffs") seeking certification of their New York Labor Law wage and hour claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.

As set forth more fully herein, Subclass 1 seeking to certify a class of hourly employees who were allegedly not compensated for work allegedly performed before the start of his/her shift and/or after the end of his/her shift should be denied as Plaintiffs cannot establish the commonality or typicality requirements of Rule 23(a), and even if they could, numerous individual factual issues predominate over this matter. Specifically, Plaintiffs seek to certify Subclass 1 based upon a legally flawed premise that an employee's punch detail, the record of when an employee arrived and left the premises, is somehow an accurate indicator of when the employee was working. The United States Department of Labor, as well as several courts, have expressly rejected this premise and held to the contrary, that early and late punching is not *de facto* evidence of working. Therefore, once the Plaintiffs' flawed premise is eliminated, it is clear that Plaintiffs' claims consist of nothing more than a hodgepodge of individual wage and hour grievances, which cannot be resolved in any common or efficient class wide basis. To that end, numerous individualized factual issues will predominate as each of the 1700 potential class members will have to establish that Riverbay suffered or permitted said employee to work on any given day and failed to pay its employee pursuant to New York Labor laws.

Subclass 2 should not be certified as there are numerous factual issues surrounding the circumstances regarding when and if any putative class member received compensatory time and whether that time was in lieu of hours worked in excess of 40 in a week.

Lastly, Subclass 3 regarding nighttime differential should not be certified as none of the Named Plaintiffs suffered any injury on account of this claim and thus, cannot adequately and fairly represent the class. Further, for at least three groups of employees, those who worked in the Power Plant, the Public Safety Department and as Lobby Attendants, there are individual factual issues regarding certain offsets for being paid for non-working lunch which will predominate.

## STATEMENT OF FACTS

### Background

Riverbay is a domestic business corporation which manages a New York State Mitchell-Lama housing cooperative in the Northeast Bronx known as "Co-Op City." Co-Op City is comprised of 35 buildings and 7 townhouse clusters which total 15,372 residential units. Riverbay offers a variety of services to its residents. Riverbay's principal place of business is located in the Bronx, New York. See Declaration of Kenneth Duchnowski[1], dated November 6, 2013, Docket No. 47 ("Duchnowski November 6th Decl.") at ¶2.

Riverbay currently employs approximately 900 hourly/non-exempt employees. The majority of these employees are members of one of seven different unions that have entered into collective bargaining agreements with Riverbay. These collective bargaining agreements contain

---

[1] Although this Declaration was originally submitted in opposition to Plaintiffs' Motion for Conditional Certification it is being resubmitted in support of the instant motion.

various different terms that directly relate to the wage and hour issues at Riverbay, which dictate how these employees are paid. Duchnowski November 6th Decl. at ¶3.

Riverbay currently has thirty-two departments, some of which perform administrative duties and some of which perform operational duties. The departments are overseen by approximately 178 supervisors who have some oversight over the employees who perform the day-to-day services in these departments. Duchnowski November 6th Decl. at ¶10. The Named and Opt-in Plaintiffs who have been deposed confirm that employees at Riverbay perform a wide variety of functions with varying levels of responsibility. See Deposition of Jonathan Frias, copy annexed to the Bardavid Declaration as Exhibit 2 ("Frias Deposition") at p. 16, ll. 13-18; Deposition of Becir Palamar, copy annexed to the Bardavid Declaration at Exhibit 8 ("Palamar Deposition") at p. 11, ll. 19-25; p. 12, ll. 1-13; Deposition of Linda Williams, copy annexed to the Bardavid Declaration as Exhibit 3 ("Williams Deposition") at p. 12, ll. 16-21; p. 28, ll. 10-25; p. 29, ll. 1-9; Deposition of Balto Pepa, copy annexed to the Bardavid Declaration as Exhibit 8 ("Pepa Deposition") at p. 11, ll. 8-25; p. 12, ll. 1-16; p. 13, ll. 5-16; Deposition of Lorna Thomas, copy annexed to the Bardavid Declaration as Exhibit 5 ("Thomas Deposition") at p. 11, ll. 23-25; p. 12, ll. 1-14; p. 24, ll. 16-25; p. 25, ll. 1-11; p. 45, ll. 20-25; p. 46, ll. 1-13; Deposition of Francisco Colon, copy annexed to the Bardavid Declaration as Exhibit 7 ("Colon Deposition") at p. 19, ll. 22-25; p. 20, ll. 1-9.

Other than a general policy of requiring that employees are compensated at least minimum wage for all hours suffered or permitted to work, and agreeing to pay at least time and one half the employee's base rate of pay for any overtime work, Riverbay does not have uniform wage and hour policies. See Duchnowski November 6th Decl. at ¶5. The hourly employees, through their respective exclusive collective bargaining representatives, negotiate their wage and

hour rules and other terms and conditions of employment which are set forth in the applicable collective bargaining agreement.  The wage and hour terms for the respective collective bargaining agreements are dissimilar, setting forth different wage rates, different contribution rates to different employee benefit funds, and different policies regarding, *inter alia*, overtime and compensatory time off.  Duchnowski November 6th Decl. at ¶5. For example, lobby attendants are provided a ¾ paid lunch each day, yet these employees do not perform any work during their ¾ hour lunch.  Declaration of Frank Apollo, dated April 28, 2014 at ¶¶2-3, submitted herewith.  Meanwhile, hourly employees in the Public Safety Department are provided a paid one hour lunch yet they do not perform any work during this period.  See Declaration of Frank Apollo, dated March 10, 2014 (Docket No. 120). Further, hourly employees in the Power Plant are provided a ½ hour daily paid lunch break yet they do not perform any work during this time.  Declaration of Brian Reardon, dated April 28, 2014, submitted herewith at ¶¶2-3.

In order to ensure that employees are present for their entire shift, Riverbay employees are required to use a hand scanner to record when they arrive at work and when they leave for the day.  Employees at Riverbay are not permitted to perform overtime work, including work before or after their scheduled shift, without first obtaining the approval of their supervisor. Deposition of Debra Pilla, copy annexed to the Bardavid Declaration as Exhibit 9 ("Pilla Deposition at 28, ll. 22-25; p. 34; p. 75, ll. 11-19.  If employees perform such work, the supervisor completes an overtime authorization form and the form is submitted to the Payroll Department for payment.  Pilla Deposition at p. 70, ll. 14-25; p. 71, ll. 1-6.  Without this form, the Payroll Department is unable to ascertain whether an employee worked outside the employee's scheduled shift, as the punch time does not equate with time the employer suffered or permitted the employee to work.  Pilla Deposition at p. 71, ll. 1-5.  Additionally, if the

employee works outside the employee's scheduled shift without approval, and the employee makes the supervisor aware of this fact, the employee is paid. Pilla Deposition at p. 76, ll. 10; Bardavid Declaration Exhibits 12 and 13 (indicating that employee was paid overtime for work performed before or after her shift).

To date, nine hourly employees of Riverbay have been deposed[2]. A review of this testimony, which is set forth in more detail herein, reveals that, to the extent any of these employees arrived before the start of their shift, or stayed past the end of their shift, there was no consistent reason or pattern for such early arrival or late departure. Compare Frias Deposition at p. 16, 11. 7-18; p. 48, ll. 4-17; p. 77, ll. 18-25; 78-1-5 with Williams Deposition p. 20, ll. 9-13 and Colon Deposition at p. 22; p. 33, ll. 7-11 and Thomas Deposition at p. 68, ll. 10-15; p. 83, ll. 7-25 and Pepa Deposition at p. 59, ll. 23-25; p. 60, ll. 1-17 and Bell Deposition at p. 45, ll. 10-25; p. 46, ll. 8-23.

Tellingly, two hourly employees, Messrs. Becir Palamar and Balto Pepa, who regularly punched in between five to thirty minutes before the start of their shift, testified that they performed no work before their shift began. Pepa Deposition at p. 59, ll. 23-25; p. 60, ll. 1-24; Palamar Deposition at p. 18, ll. 16-25, p. 19, ll. 1-3. Mr. Pepa further explained that he traveled a long distance to work and that he liked to arrive early and relax before he started his shift. Pepa Deposition at p. 58, ll.15-23; p. 59, ll. 1-11. This testimony is consistent with the testimony

---

[2] Named Plaintiff Rosaly Ramirez was deposed as well as opt-in Plaintiff Carmelo Perez. Ms. Ramirez was classified by Riverbay as an exempt employee from April 1, 2007 through September 23, 2012. See Declaration of Kenneth Duchnowski, dated March 10, 2014 (Docket No. 119) at ¶25. Likewise, Carmelo Perez was classified as an exempt employee from his promotion to Sergeant in June 2006 until his termination from employment in 2011. Declaration of Kenneth Duchnowksi, dated April 28, 2014, submitted herewith, at ¶2. As exempt employees are not entitled to overtime, their testimony regarding whether they performed work before or after their shift after they became an exempt employee is irrelevant. To the extent that Plaintiffs rely on such testimony (see Plaintiffs' Memorandum at p. 5) it should be disregarded.

of Mr. Herbert Freedman, a principal for MSI, who explained that, for over ten years, he has seen employees at Riverbay punch in and then go to the restroom or get breakfast or even go shopping in one of the shopping centers located at Co-Op City.  Deposition of Herbert Freedman, copy annexed to the Bardavid Declaration as Exhibit 10 ("Freedman Deposition") at pp. 48, ll. 20-25; 49, ll. 1-6.

## LEGAL STANDARD

"In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of Rule 23(a) of numerosity, commonality, typicality, and adequacy."  Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201–02 (2d Cir. 2008).  In addition to the factors set forth in 23(a), the moving party must also establish that "questions of law or fact common to all class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "It is well settled that certification is proper only if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.  This rigorous analysis requires examining the facts of the dispute, not merely the pleadings, and it will frequently entail some overlap with the merits of the plaintiff's underlying claim." Floyd v. City of New York, 283 F.R.D. 153, 160 (S.D.N.Y. 2012) (internal quotations and citations omitted). Contrary to the Plaintiffs' assertion, the fact that Plaintiffs met the very modest factual showing required for conditional collective action certification under the Fair Labor Standards Act does not translate into a finding that a Rule 23 state law class action should be certified.  See Zaniewski v. PRRC Inc., 848 F. Supp. 2d 213, 220 (D. Conn. 2012) (comparing the "modest showing a plaintiff must make to obtain conditional certification of an FLSA collective action

[with] the much higher threshold of demonstrating that common questions of law and fact will 'predominate' for Rule 23 purposes").

## LEGAL ARGUMENT

I. **Proposed Subclass 1 Consisting of Employees Who Were Allegedly Not Compensated For Work Allegedly Performed Before or After Their Shift Should Not be Certified**

A. **Named Plaintiffs Cannot Satisfy the Commonality or Typicality Requirement**

As explained by the United States Supreme Court, to satisfy the commonality requirement, it is not sufficient for Plaintiffs to put forth a series of allegedly common questions. Rather the Plaintiffs' "claims must depend upon a common contention" and "[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). "The commonality and typicality requirements tend to merge into one another as both seek to ensure that the named plaintiffs' claims are closely interrelated to those of the class…. The typicality requirement, on the other hand, is satisfied when each class member's claim arises from the same course of events, and each class member will make similar arguments to prove a defendant's liability." Eldred v. Comforce Corp., 3:08-CV-1171 LEK/DEP, 2010 WL 812698 (N.D.N.Y. Mar. 2, 2010) (citing Marisol A. by Forbes v. Giuliani, 126 F.3d 372, 376 (2d Cir.1997).

While Plaintiffs have posed several so called common questions, the central tenant of Plaintiffs' claim under Subclass 1 is that "the time a Riverbay Employee is recorded as clocked-

in is an accurate reflection of the time they are performing job related duties[3]". Plaintiffs assert

they will be able to establish their claim based solely upon the employees punch detail reports

and the employees' pay stubs. Plaintiffs' Memorandum at pp. 5, 10, 17; Wilkinson Decl. Ex. L.

Indeed, it is clear that Plaintiffs intend to answer all their so called common questions and

establish typicality by comparing the time an employee punches in or out with the time for which

they were paid. See Plaintiffs Memorandum at pp. 4 and 6. This proposition is fatally flawed

and demonstrates that there are no common class wide answers to any of the questions posed by

the Plaintiffs. As such, Plaintiffs cannot satisfy the commonality or typicality requirements to

certify a class of Plaintiffs.

Under both the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL")

employees are only required to be paid for the time they are suffered or permitted to work. 29

U.S.C. § 203(g); Paz v. Piedra, 09 CIV. 03977 LAK, 2012 WL 121103 (S.D.N.Y. Jan. 12, 2012)

("The NYLL's definition of employment is nearly identical to the FLSA's"); Seever v. Carrols

Corp., 528 F. Supp. 2d 159, 163, fn. 2 (W.D.N.Y. 2007) (noting that claims for "off the clock"

work under the FLSA and NYLL are nearly identical and recognizing that federal precedent is

---

[3] It should be noted that, in support of the proposition that employees start work the moment that an employee clocks in, Plaintiffs cite to deposition testimony of Jonathan Frias and Rosaly Ramirez. See Plaintiffs' Memorandum at p. 5. The cited testimony does not support this proposition. First, in the cited testimony Mr. Frias merely testified that he was aware of only two occasions where he performed work after the end of shift for which he was not compensated. He does not testify that employees begin work the minute they punch in, nor could he considering that he admitted during his deposition that he could not identify any individuals subject to the same wage and hour policies that he was complaining about. See Frias Deposition at p. 108. Likewise Ms. Ramirez, who was exempt for the vast majority of the relevant time period, does not testify that she started work the minute she punched in, nor was she able in her deposition to name a specific individual who had been subject to time rounding as alleged in the Complaint. Ramirez Deposition at pp. 223-224, ll. 4-10. Thus, the conclusory statement by Plaintiffs that Riverbay employees start work when they punch in should be disregarded in its entirety. Further such testimony is contradicted by two class members. See Pepa Deposition at p. 59, ll. 23-25; p. 60, ll. 1-24; Palamar Deposition at p. 18, ll. 16-25, p. 19, ll. 1-3.

applicable to such claims under NYLL).  To that end, both the FLSA regulations and the E-laws

Advisor prepared by the United States Department of Labor state the fact that an employee is

punched in is not synonymous with working.  See 29 C.F.R. § 785.48; E-laws FLSA Hours

Worked Advisor, available at www.dol.gov/elaws/esa/flsa/hoursworked/screenee29.asp, copy

attached to the Bardavid Declaration as Exhibit 15.  Specifically, the FLSA regulations provide

that:

> Time clocks are not required. In those cases where time clocks are used,
> employees who voluntarily come in before their regular starting time, or
> remain after their closing time, do not have to be paid for such periods
> provided, of course, that they do not engage in any work. Their early or
> late clock punching may be disregarded.

29 C.F.R. § 785.48(a).  Consistent with these regulations the E-laws Advisor prepared by the

USDOL to advise employees states that, "[e]arly or late punching of the clock is not hours

worked when no work is done."  Bardavid Declaration, Exhibit 15; Babineau v. Fed. Exp. Corp.,

576 F.3d 1183, 1191 (11th Cir. 2009) (holding that "the district court reasonably concluded that

punch clock records do not provide common proof of any uncompensated work during gap

periods" i.e. the time between when an employee punched in and the time an employee's shift

began or the time between when an employee's shift ended and the time they punched out).

Thus, it is not sufficient for the Plaintiffs to prove a violation of New York Labor Law by merely

demonstrating that employees punched in before the start of their shift or punched out after their

shift. Rather Plaintiffs must establish that Plaintiffs were working during these gap times and, for

the purposes of certifying a class, must show that the inquiry of work during gap times can be

resolved most efficiently through class certification. Plaintiffs here cannot make this showing.

   The parties will be required to inquire, for each individual class member, whether he or

she performed work between the time he or she punched in and the start of his or her shift;

whether he or she performed work between the end of his or her shift and the time he or she

clocked out; and whether anybody with authority in Riverbay was aware that the employees were actually working during these gap times and permitted the work.  As such, the fact that an employee was punched in before the start of his or her shift or punched out after the end of the shift will not "resolve an issue that is central to the validity of …. the claims in one stroke." Dukes, 131 S. Ct. at 2551; Romero v. H.B. Auto. Grp., Inc., 11 CIV. 386 CM, 2012 WL 1514810 (S.D.N.Y. May 1, 2012) (noting that "whether Defendants failed to pay overtime and minimum wage in violation of the NYLL—are important considerations in this case. But "they are not common one[s].")

   To the extent that Plaintiffs assert that their claims are somehow common or typical of other employees at Riverbay, such that they can establish some uniform *de facto* policy of requiring employees to work before the start of their shift or after the end of their shift, a review of the limited deposition testimony highlights the fallacy of such a claim.  For example, Mr. Jonathan Frias, a peace officer in Riverbay's Public Safety Department, testified that, pursuant to directives in the Riverbay Patrol Guide, applicable to Public Safety officers only, he allegedly was required to perform paperwork and gather his equipment before the start of his shift.  See Frias Deposition at p. 16, 11. 7-18; p. 48, ll. 4-17; p. 77, ll. 18-25; 78-1-5.  Mr. Frias also testified that we would have to work after his scheduled shift when he made a late arrest and had to finish paperwork.  Mr. Frias is the only hourly employee who alleged that the directives in the Patrol Guide required early arrival or late departure.

   Linda Williams, an employee in Riverbay's Cooperator Services Department, on the other hand, testified that she arrived five to twenty five minutes before the start of her shift and that she would "get the office up and running; turn the computer on; turn the phone on." Williams Deposition p. 20, ll. 9-13. Ms. Williams conceded that she was often the first person to

arrive in the morning; that nobody told her she needed to start work prior to her shift and there was no written directive ordering her to start work prior to her shift; and nobody asked her to perform work before the start of her shift, which would undercut any claim that Riverbay suffered or permitted her to work before the start of her shift.  Williams Deposition at p. 20, ll. 23-25; p. 21, ll. 1-3, 24-25, p. 22, ll. 1-18.

Katherine Bell, who also worked in the same office as Ms. Williams, testified that she would arrive before her scheduled shift and punch the time clock.  Bell Deposition at p. 82, ll. 12-18.  Ms. Bell did not believe that anyone other than Ms. Williams was present when she arrived.  Bell Deposition at p. 82, ll. 18-23.  Further, Ms. Bell conceded that she never submitted an overtime authorization form for this period and nobody at Riverbay told her she had to arrive early, which calls into question whether Riverbay suffered or permitted Ms. Bell to work before her scheduled shift.  Bell Deposition at p. 78, ll. 21-25; p. 79, ll. 1-7; p. 82, ll. 24-25; p. 83, ll. 1-22.

Ms. Thomas, who worked in both the Bookkeeping and Sales Departments in the past six years, claims that at times she came in early because she "couldn't complete what [she had] to do within the seven hours" and that on one occasion when she arrived early she was asked to perform work.  Thomas Deposition at p. 68, ll. 10-15; p. 83, ll. 7-25.  Ms. Thomas concedes that nobody told her that she had to come in early, and further concedes that she never told her supervisor that she could not complete her work within her seven hour day.  Thomas Deposition at p. 68, ll. 8-9; p. 28, ll. 21-25; p. 29, ll. 1-7.  Ms. Thomas also conceded that at times she received payment during her employment when she arrived early or stayed late and performed work, which undercuts any claim of a class wide policy requiring employees to work before or

after their shift without compensation.  See Bardavid Declaration at Exhibits 13 and 14; Thomas

Deposition at p. 71, ll. 12-14; p. 73, ll. 1-7; p. 74, ll. 17-19.

Mr. Colon, a parking garage attendant, testified that he would punch in five to ten

minutes before the start of his shift.  Colon Deposition at p. 22, ll. 8-25.  During this time Mr.

Colon alleges that he would watch the other attendant count the money and the garage tickets.

Colon Deposition at p. 22, ll. 1-5.  There is a factual dispute as to whether this constitutes

working since Mr. Colon also testified that when he arrives prior to his shift he does not actually

start working until he steps into the booth.  Colon Deposition at p. 103, ll. 1-20.  Further,

Riverbay expressly denies that Garage Attendants are required to watch the outgoing attendant

count his or her money before ending the shift.  Declaration of Warren Mitchell, dated April 28,

2014, submitted herewith, at ¶3.  Mr. Colon also testified that he regularly punches out 5 to ten

minutes before the end of his shift and that he did not perform any work after punching out.

Colon Deposition at p. 19, ll. 5-13.  On the rare occasions that he worked past the end of his

shift, it was because his relief person arrived late and he could not leave the parking booth

unattended.  Colon Deposition at p. 33, ll. 7-11.   Mr. Colon is the only employee who testified

he had to be relieved before he could leave for the day.

Mr. Balto Pepa, an employee in the Electrical Maintenance Department, alleged that

when he worked at the emergency desk in addition to his regular duties he would not be paid for

the first half hour of the additional time spent at the emergency desk shift.  See Pepa Deposition

at p. 16, ll. 8-12; p. 18, ll. 17-25; p. 19, ll. 1-14.  He conceded that he would be paid overtime for

the remainder of this extra shift and that his complaint was limited to the initial one-half hour

period. Pepa Deposition at p. 19, ll. 1-14.

Further, it is noteworthy that Riverbay's hourly employees work in one of thirty-two different departments and are under the supervision of approximately 178 supervisors who have some oversight over the employees who perform the day to day services in these departments. Duchnowski November 6th Decl. at ¶10. The testimony of those deposed thus far, further illustrates that each department performs different functions and that there are no cohesive duties or responsibilities amongst the proposed subclass. See Frias Deposition at p. 16, ll. 13-18 (explaining that as a public safety officer he was responsible for "responding to emergency calls, patrolled, enforced the law of the City and State of New York and the housing complex"); Palamar Deposition at p. 11, ll. 19-25; p. 12, ll. 1-13 (explaining that as an emergency maintenance desk supervisor his duties required him or the mechanic on duty with him to respond to emergencies including those involving "Water shortage. Water breaks. Fires. Gas odors. Heating shortage. Air conditioning shortage in the summertime"); Linda Williams Deposition at p. 12, ll. 16-21; p. 28, ll. 10-25; p. 29, ll. 1-9 (explaining that as a Cooperator Service Representative she was responsible for calling residents to schedule repairs in their apartments and coordinating with the maintenance department); Pepa Deposition at p. 11, ll. 8-25; p. 12, ll. 1-16; p. 13, ll. 5-16) (explaining that he worked as a maintenance electrician and that he fixed electrical problems in the apartments and offices and that he also filled in at the emergency desk where he would "fix any problem … in those apartments"); Thomas Deposition at p. 11, ll. 23-25; p. 12, ll. 1-14; p. 24, ll. 16-25; p. 25, ll. 1-11; p. 45, ll. 20-25; p. 46, ll. 1-13; (explaining that as a Rent Bookkeeper she was responsible for answering phone calls regarding rent issues; preparing reports regarding residents who were behind in their payments; following up with letters regarding outstanding balances and processing rent payments and that as a Sales Associate she is responsible for preparing the files for new residents when they move in; putting

through applications for apartments and processing payments); Colon Deposition at p. 19, ll. 22-25; p. 20, ll. 1-9 (testifying that as a Garage Attendant he was responsible for collecting money at the parking garage, balancing the money collected with the receipts and being the "eyes and ears of the co-op" in the garage in case someone got in a car accident, stuck in the elevator or otherwise was injured in the garage).

In sum, "Plaintiffs' evidence regarding off-the-clock work consists of individualized and particular incidents …" As such the Court should deny the Plaintiffs' motion to certify Subclass 1. See Fernandez v. Wells Fargo Bank, N.A., 12 CIV. 7193 PKC, 2013 WL 4540521 (S.D.N.Y. Aug. 28, 2013) reconsideration denied, 12 CIV. 7193 PKC, 2013 WL 5912158 (S.D.N.Y. Nov. 1, 2013) (holding that employees could not establish commonality because of the various factual circumstances of each off the clock claim).

## B. Numerous Issues Regarding Whether Each Employee Was Suffered or Permitted to Work Will Predominate Over The Entire Matter

Plaintiffs cannot establish that they satisfied Rule 23(b)'s predominance requirement for Subclass 1. "The predominance requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Myers v. Hertz Corp., 624 F.3d 537, 547-48 (2d Cir. 2010). The requirement is satisfied only "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir.2002). Recently, the Supreme Court explained that the same "rigorous analysis" required of Rule 23(a)'s commonality requirement also applies to Rule 23(b)(3)'s predominance requirement. Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013) ("If anything Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)"). As set forth

herein, Plaintiffs cannot establish that their claims are subject to any generalized proof and the individual inquiries into whether Plaintiffs were suffered or permitted to work on any given day will dominate this matter.

In support of their burden under Rule 23(b)(3), Plaintiffs again rely upon their proposition that an employee must be paid from the minute they punch in to the minute they punch out, and assert that the generalized proof necessary to satisfy Rule 23(b)(3) is satisfied *vis-a-vis* the employees' punch detail record. See Plaintiffs Memorandum at p. 17; Wilkinson Decl. Ex. L. at ¶¶7-10. As set forth above, this premise is legally incorrect and Plaintiffs cannot prove their claims simply by establishing that they were punched in and punched out at specific times. Once the Plaintiffs' legal theory—that the time clock is a dispositive indicator of working—is removed there are no predominating common legal or factual questions subject to resolution on a class wide basis. Babineau v. Fed. Exp. Corp., 576 F.3d 1183, 1191 (11th Cir. 2009) ("the district court reasonably concluded that punch clock records do not provide common proof of any uncompensated work during gap periods …"); Cornn v. United Parcel Serv., Inc., C03-2001 TEH, 2005 WL 2072091 (N.D. Cal. Aug. 26, 2005) (denying Rule 23 motion to certify a wage and hour class "based on the difference between package-car drivers' scheduled start times and the times at which drivers punch in …").

The Eleventh Circuits' decision in Babineau is particularly instructive in that the Eleventh Circuit Court of Appeals expressly rejected the very claims asserted in this litigation and denied a motion for Rule 23 certification. Specifically, in Babineau, the employees claimed that their employer failed to compensate them from the time they punched in to the start of their shift Id. at 1186. In finding that individual factual issues predominated over common legal issues, the Eleventh Circuit Court of Appeals opined:

> With respect to gap period work [that is the time between punching and the start of the shift or the time between the end of the shift and punching out], there are innumerable reasons why an employee may have arrived at the FedEx facility early on any given day. While those reasons may in fact relate to completing work, they may also relate to a plethora of non-work activities such as socializing, checking e-mail, beating traffic, etc. Likewise, the end of day gap periods may also have been the result of employees staying late at the facility to engage in non-work related activities.

Babineau, 576 F.3d at 1191 (11th Cir. 2009). The Court of Appeals concluded that the employee time records did not set forth generalized proof necessary to satisfy Rule 23(b)(3) and the Court of Appeals declined to certify the class. Id. at 1192. Tellingly, the Eleventh Circuit Court of Appeals rejected the employees' theory, "that an employee is 'suffered or permitted to work' from the moment he punches in …." Id. at 1192.

Like the claims in Babineau, the testimony thus far establishes that employees at Riverbay may have punched in early or punched out late for a myriad of reasons, none of which are consistent, and some of which are not related to working at all. As set forth in detail in Section I(A) supra, except for two of the plaintiffs, both of whom worked in the same small office under the same supervisor, none of the Plaintiffs' alleged reasons for working before or after their shift are the same. Nor do Plaintiffs cite to any common policy. Rather, two employees claimed that they came in early and turned on the computer and the phones. A different employee claimed he had to arrive early or stay late to complete paperwork. Yet another employee claimed he was not compensated for the first half hour when he worked at the emergency desk. Other employees claimed they had to arrive early or stay late due to the press of work in their specific department during a limited period of time. Yet another employee allegedly stayed late when his relief person did not arrive. Another employee testified he stayed late on the rare occasions when he was responding to an emergency such as a gas or water leak. Compare Frias Deposition at p. 16, ll. 7-18; p. 48, ll. 4-17; p. 77, ll. 18-25; 78-1-5 with

Williams Deposition p. 20, ll. 9-13 and Colon Deposition at p. 22; p. 33, ll. 7-11 and Thomas Deposition at p. 68, ll. 10-15; p. 83, ll. 7-25 and Pepa Deposition at p. 59, ll. 23-25; p. 60, ll. 1-17 and Bell Deposition at p. 45, ll. 10-25; p. 46, ll. 8-23 and Palamar Deposition at p. 18, ll. 16-25, p. 19, ll. 1-3.

Furthermore, just like in <u>Babineau,</u> the testimony establishes employees at Riverbay may punch in early for reasons wholly unrelated to working. Specifically, in direct contradiction to the above testimony, two of the opt-in Plaintiffs, Messrs. Becir Palamar and Balto Pepa conceded that, while they regularly punched in before the start of their shift, they did not perform any work until their shift started. <u>See</u> Pepa Deposition at p. 59, ll. 23-25; p. 60, ll. 1-24; p. 77; Palamar Deposition at p. 18, ll. 16-25, p. 19, ll. 1-3. Mr. Palamar testified that he typically punched in using the hand scan five to fifteen minutes prior to the start of his shift, but conceded that he never performed any work prior to the start of his shift. Palamar Deposition at p. 18, ll. 16-25, p. 19, ll. 1-3.

Mr. Pepa explained that he generally punched in as much as a half hour before the start of his shift because he "lives far and [he] drives and sometimes [he] get early in there, and [he] punch in." Indeed he testified that he thought it was "crazy" that his supervisor suggested that he not punch in early "[b]ecause if I come to work – if I'm on the job, I can punch in and sit down and relax for a half hour." Pepa Deposition at p. 58, ll.15-23; p. 59, ll. 1-11. Mr. Pepa's testimony is consistent with that of Herbert Freedman who testified that employees for the past ten years after punching in "go to the restroom, then they go get their bagel and coffee, they go shopping, they do whatever …." Freedman Deposition at pp. 48, ll. 20-25; 49, ll. 1-6.

In addition to the contradictory and varying testimony regarding the type and reasons for arriving early or staying late, there are numerous individualized defenses/issues that would

predominate.  For example, several of the Plaintiffs admit that no supervisor was present when the alleged off the clock work was performed. Other potential class members concede no one asked them to perform off the clock work. Only one Plaintiff claims he was told by a supervisor to come in early.  Williams Deposition at p. 20, ll. 23-25; p. 21, ll. 1-3, 24-25, p. 22, ll. 1-18; Bell Deposition at p. 78, ll. 21-25; p. 79, ll. 1-7 82, ll. 12-18; Thomas Deposition at p. 68, ll. 8-9. Further, there are questions as to whether the type of work described, such as turning on the lights and the copier without any direction from management, constitutes work.  See e.g. Reich v. New York City Transit Auth., 45 F.3d 646, 651 (2d Cir. 1995) ("an activity constitutes 'work' (compensable under the FLSA) if it involves physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.")  These are just representative examples of the issues that will predominate with each potential class member.

The representative testimony thus far also further illustrates the factual issues regarding whether punching in before the start of the shift or after the end of the shift is an indication of actual work.  Lorna Thomas, whose punch detail records indicate that she punched out after 5:00 P.M. (Bardavid Declaration, Exhibit 11) conceded that she did not do any work after 5:00 P.M. See Thomas Deposition at p. 86, ll. 20-22.    Likewise, Mr. Pepa testified that he performed work after his 4:30 P.M. shift two to five times a year.  Pepa Deposition at p. 77, ll. 12-25, p. 78, ll. 1-11.  Yet Mr. Pepa's punch detail records for the period April 2, 2007 through April 27, 2007, a four week period of time, reflect that Mr. Pepa punched out after the end of his 4:30 P.M. shift on sixteen out of twenty days worked.  Bardavid Declaration at Exhibit 14. The discrepancy between the punch detail report and Mr. Pepa's testimony further illustrates the highly factual

inquiry that would be required to prove that any employee in the proposed class performed work on any given day before or after their shift.

Further, it should be noted that Ms. Thomas testified that while on at least one occasion she requested and was paid for performing work before and after the start of her shift for several weeks, she failed to request payment or make anyone in management aware of the other times she allegedly worked before or after her shift. See Thomas Deposition at p. 75, ll. 3-25; p. 76, p. 77, ll. 1-25, p. 78, ll. 1-8; Bardavid Decl. Exhibit 14. Mr. Palamar likewise indicated he would work after his shift between twenty or twenty five times a year when there was an emergency. See Palamar Deposition at pp. 19-20. Mr. Palamar testified that although he knew he could request overtime when he worked these emergencies, and that he was compensated for other times when he worked after his shift, he did not submit overtime slips unless he worked more than forty five minutes after his shift and "[he] say forget it. This is on me, not you know, this if for the company." Palamar Deposition at p. 63, ll. 8-25; p. 64, ll. 1-7. Mr. Palamar conceded that he made this decision on his own. Palamar Deposition at p. 64, ll. 8-11. These situations provide Riverbay yet another highly individualized defense. See e.g. White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012) cert. denied, 134 S. Ct. 296, 187 L. Ed. 2d 153 (2013) ("When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA"[4]) .

In sum, a review of the limited deposition testimony thus far makes clear that "[r]esolution of the many fact-specific issues in this case would essentially require [1700] mini-

[4] This case is not being cited to establish that Defendants will prevail on this defense or to address the underlying merits of these claims, but rather to illustrate the highly individualized factual inquiries that are required to establish whether Defendants are liable to any particular employee.

trials in which each individual plaintiff could present evidence that he or she in fact failed to receive proper overtime compensation—evidence that would then be subject to cross-examination and similar challenge by the defendant." Zivali v. AT & T Mobility, LLC, 784 F. Supp. 2d 456, 469 (S.D.N.Y. 2011)(decertifying FLSA off the clock collective action).  As such, the Court should decline to certify Subclass 1.   See Tracy v. NVR, Inc., 293 F.R.D. 395, 400 (W.D.N.Y. 2013) (denying motion to certify NYLL wage and hour class action for off the clock claims due to the highly individualized nature of said claims); Fernandez; 2013 WL 4540521 at *15; 2005 WL 2072091 at *5; Basco v. Wal-Mart Stores, Inc., 216 F. Supp. 2d 592, 603 (E.D. La. 2002) (declining to certify Rule 23 class as "individualized issues will arise from the myriad of possibilities that could be offered to explain why any one of the plaintiffs worked off-the-clock").

Lastly, Plaintiffs' suggestion that any individuated issues and/or its failure to satisfy the requirements of Comcast[5] can be cured by certifying the matter only for liability purposes is misplaced, and the proposed bifurcation between liability and damages does not cure the problems outlined above.  See Plaintiffs' Memorandum at p. 20.   Here there is no dispute that if an employee was present when their shift began and was present at the end of their shift they were fully compensated for their scheduled shift.  The issue here is whether employees are entitled to additional compensation for the period of time between when they punched in and the start of their shift and the period of time between when their shift ended and the actual time they

---

[5] While Plaintiffs dispute the applicability of Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013) Plaintiffs have submitted a report prepared by Dwight D. Steward to purportedly establish that damages could be calculated on a class wide basis.  See Wilkinson Decl. at Exhibit L ¶¶7-10.  A review of this report makes clear that Plaintiffs' method for calculating damages is based upon the flawed premise that punching in equates to working.  As this is not the case and Plaintiffs have not submitted any report that takes into account the highly factual issues herein Plaintiffs have failed to satisfy their burden under Comcast.

punched out, which as noted is dependent on the individual inquiry of whether an employee is actually suffered or permitted to work by Riverbay. Plaintiffs fail to explain how bifurcating liability and damages would address the fact that liability is inextricably intertwined with damages and rather cite to <u>Jacob v. Duane Reade, Inc.</u>, 293 F.R.D. 578, 588-89 (S.D.N.Y. 2013) which is not on point. To that end in <u>Duane Reade, Inc.</u> the issue was whether the employer properly classified Assistant Store Managers as exempt. <u>See</u> <u>Jacob v. Duane Reade, Inc.</u>, 289 F.R.D. 408, 411 (S.D.N.Y. 2013). Unlike the instant matter, the Court in <u>Duane Reade, Inc.</u> recognized that whether an employer properly classified an employee could, for liability purposes, be decided based upon an employees' job description and the issue of damages, if any, could be addressed in a separate proceeding. Here, as set forth above, the Plaintiffs' claim for liability cannot be established on any class wide basis but would rather require each potential class member to prove that they were suffered or permitted to work for each period. This would require 1700 employees testifying which is unmanageable[6]. The issue of liability is inextricably intertwined with damages in that Defendants are only liable for pre- or post-shift work, which would require the same proof for damages. Indeed, Plaintiffs have failed to cite to any post-<u>Comcast</u> case involving off the clock work wherein the Court bifurcated the issue of liability and damages.

## II. PROPOSED SUBCLASS 2 SHOULD NOT BE CERTIFIED

The Plaintiffs' second proposed subclass includes non-exempt hourly employees who allegedly "were improperly offered and accepted comp time in lieu of overtime payments". This subclass, if permitted, would likewise require a detailed factual inquiry for each putative member. Additionally, because Riverbay employees are subject to seven separate collective

---

[6] The fact that Plaintiffs' claims would require 1700 mini-trials is also evidence that a class action is not a superior method of resolution and is not efficient as required by FRCP Rule 23.

bargaining agreements, their claim of compensatory time violations will be highly dependent upon the precise terms of their respective collective bargaining agreements.  For example, some of the collective bargaining agreements have a thirty five hour workweek and provide for contractual overtime when an employee works in excess of thirty five hours in a week or excess of 7 hours in a day.  Given that the NYLL only requires overtime for hours worked in excess of forty in a given week, to determine whether the payment of compensatory time in lieu of cash overtime implicated the NYLL one must review the specific collective bargaining agreement to determine if the compensatory time was paid pursuant to contract as opposed to NYLL overtime.  The parties would still have to determine damages, which would be an employee-specific endeavor.  See Lupien v. City of Marlborough, 387 F.3d 83 at 88 (1st Cir. 2004) (explaining that courts can deduct paid comp time from the total amount of overtime pay the employer would have owed the employee).  Since individual claims predominate, the Court, respectfully, should deny Plaintiffs' motion to certify Proposed Subclass 2.

### III. PROPOSED SUBCLASS 3 REGARDING NIGHTTIME DIFFERENTIAL SHOULD NOT BE CERTIFIED

#### A. The Named Plaintiffs Do Not Possess the Same Interest As Proposed Class Members

In order to meet the requirement of Rule 23(a)(4), "[a] class representative must possess the same interest and suffer the same injury as the class members." Webb v. Merck & Co., 206 FRD 399, 408 (E.D.N.Y 2002).  In Subclass 2 the Named Plaintiffs seek to represent a class of current or former hourly employees at Riverbay who did not have the nighttime differential claim factored into their regular rate of pay for overtime purposes.  As set forth in Defendants' Partial Motion for Summary Judgment (Docket Nos. 118 through 123), the undisputed facts establish that none of the Named Plaintiffs were damaged by the alleged failure to include

nighttime differential pay in their regular rate of pay for the calculation of overtime and in fact, the Named Plaintiffs were overpaid.  To the extent the Court grants Defendants' motion to dismiss these claims, the Named Plaintiffs would have no interest in pursuing these claims as they were not injured by this alleged practice.

Moreover, contrary to the Plaintiffs' assertion, the Named Plaintiffs "are asserting separate claims for relief … beyond those sought by absent members of each Subclass." Plaintiffs Memorandum at p. 14.  Specifically, in the Amended Complaint the Named Plaintiffs assert that Defendants unlawfully rounded the time clocks, such that employees who were clocked in three minutes after the employees' shift began were paid beginning six minutes into their shift and assert that they were not compensated for their unpaid meal breaks.  See Amended Complaint ¶¶ 25, 37.  While the Plaintiffs assert in the Amended Complaint that they will seek class certification of these claims, the instant motion abandons these claims.  As such, Plaintiffs are pursuing fact intensive claims that are separate from those asserted on behalf of all class members.  Further, it is noteworthy that the Named Plaintiffs filed a partial motion for summary judgment on their own behalf calling into question whether Plaintiffs are more interested in pursuing individual claims rather than asserting claims on behalf of absent class members.

**B.  There are Numerous Highly Factual Issues Which Preclude Certification of This Claim.**

Plaintiffs' claim regarding nighttime differential should not be certified as Plaintiffs cannot meet the requirements of FRCP Rule 23(b)(3).  As set forth above for three categories of hourly employees - those working in the Public Safety Department, those working in the Power Plant and those working as Lobby Attendants it is Defendants' position that, to the extent any monies are owed for the alleged failure to include nighttime differential in the regular rate of pay for purposes of calculating overtime, Riverbay is entitled to a daily one hour, one half hour and

one forty five minute credit respectively for these employees.  See Declaration of Frank Apollo, dated March 10, 2014 at ¶ (Docket No. 120); Declaration of Brian Reardon, dated April 28, 2014 at ¶¶2-3; Declaration of Frank Apollo, dated April 28, 2014 at ¶¶3-4.  Defendants suspect that at least some members of these Departments who are potential class members would assert that they worked through their paid lunch and that Riverbay is not entitled to the credit.  Unless Plaintiffs concede these credits, resolution of this issue would require mini-trials to determine whether the credit would be applicable to any given day.  Such mini trials would prevent any meaningful class wide resolution and these individualized issues would predominate.

## CONCLUSION

For the reasons set forth supra, the Court should, respectfully, deny the Plaintiffs' motion in its entirety, together with awarding the Defendants their costs and attorneys' fees in filing this motion.

Dated:  White Plains, NY
April 28, 2014

Respectfully submitted,
TRIVELLA & FORTE, LLP

  /s/ *Jonathan Bardavid*
BY:  JONATHAN BARDAVID (JB 0072)
*Attorneys for Defendants*
1311 Mamaroneck Avenue, Suite 170
White Plains, New York 10605
Tel. No.:  (914) 949-9075

To:   Lee S. Shalov, Esq. (LS-7118)
Brett R. Gallaway, Esq. (BG-8585)
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
Lshalov@mclaughlinstern.com/bgallaway@mclaughlinstern.com

Louis Ginsberg, Esq. (LG-I048)
Matthew Cohen, Esq. (MC-2595)
LAW FIRM OF LOUIS GINSBERG, P.C.
1613 Northern Blvd.
Roslyn, New York 11576
Telephone: (516) 625-0105
19@1ouisginsberglawoffices.com