UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

ROSALY RAMIREZ, ET AL.,

                     Plaintiffs,          **13 Civ. 2367 (JGK)**

      - against -           **OPINION AND ORDER**

RIVERBAY CORP., ET AL.,

                    Defendants.

————————————————————————

**JOHN G. KOELTL, District Judge:**

    The plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"), §§ 190 et seq. & 650 et seq., claiming various violations of their right to receive a minimum wage and overtime compensation.  The plaintiffs allege, among other things, that they were unlawfully provided compensatory time off in lieu of overtime wages for hours worked in excess of forty hours per week (the "comp time claims"), and that the defendants unlawfully failed to incorporate a nighttime wage differential in the plaintiffs' base pay when calculating the plaintiffs' overtime wages (the "nighttime differential claims").  Presently before the Court are the parties' cross-motions for summary judgment on the plaintiffs' comp time and nighttime differential claims.  Also before the Court is the defendants' motion to dismiss the comp time and nighttime differential claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the

ground that these claims are preempted under Section 301 of the
Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).
Finally, Defendant Peter Merola has moved to dismiss all claims
against him pursuant to Rule 12(b)(6) on the ground that the
plaintiffs have failed to allege that he is individually liable
under the FLSA and the NYLL.  For the reasons that follow, the
plaintiffs' motion for summary judgment is granted in part and
denied in part; the defendants' cross-motion for summary
judgment is denied; the defendants' motion to dismiss on
preemption grounds is denied; and Defendant Merola's motion to
dismiss is denied.


                                I.

     The standard for granting summary judgment is well
established.  "The Court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs.,
LP, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's
task at the summary judgment motion stage of the litigation is
carefully limited to discerning whether there are any genuine
issues of material fact to be tried, not to deciding them.  Its

duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

   In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the

3

motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Spencer v. Ellsworth, No. 09cv3773, 2011 WL 1775963, at *1 (S.D.N.Y. May 10, 2011).  If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law.  Admiral Indem. Co. v. Travelers Cas. & Sur. Co. of America, 881 F. Supp. 2d 570, 574 (S.D.N.Y. 2012).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiffs' favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiffs have stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to

4

draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiffs, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Chen v. Major League Baseball, -- F. Supp. 2d --, 2014 WL 1230006, at *1 (S.D.N.Y. 2014).


II.

The following facts are undisputed unless otherwise noted.

A.

The named plaintiffs in this action are current and former hourly employees of RiverBay.  (Am. Compl. ¶¶ 8-12.)  They allege that the defendants have engaged in various policies and

practices of failing to pay minimum wage and overtime compensation in violation of their rights under the FLSA and the NYLL.  (Am. Compl. ¶ 3.)

Defendant RiverBay manages Co-Op City, which is the largest cooperative housing development in the world.  (Am. Compl. ¶ 14.)  Defendant Marion Scott is the exclusive property manager for all of RiverBay's residential and commercial properties. (Am. Compl. ¶ 15.)  Individual Defendants Vernon Cooper and Peter Merola are RiverBay's General Manager and Director of Finance, respectively.  (Am. Compl. ¶¶ 17-18.)

Plaintiff Rosaly Ramirez was employed by RiverBay in various positions, including sergeant, officer, detective, and secretary, from April 2001 to February 2013.  (Decl. of Rosaly Ramirez in Supp. of Mot. for Partial Summ. J. ("Ramirez Decl.") ¶ 2.)  Plaintiff Katherine Bell has been employed by RiverBay as a customer service representative since January 1996.  (Decl. of Katherine Bell in Supp. of Mot. for Partial Summ. J. ("Bell Decl.") ¶ 2.)  Plaintiff Linda Williams has been employed by RiverBay as a dispatcher in the Public Safety Office and as a full-time customer service representative with the Cooperator Service Office since May 14, 2001.  (Decl. of Linda Williams in Supp. of Mot. for Partial Summ. J. ("Williams Decl.") ¶ 2.) Plaintiff Lorna Thomas has been employed by RiverBay as a

6

bookkeeper in the Finance Department, and then as a sales associate in the Residential Sales Department, from 1984 to the present.  (Decl. of Lorna Thomas in Supp. of Mot. for Partial Summ. J. ("Thomas Decl.") ¶ 2.)  Finally, Plaintiff Jonathan Frias was employed by RiverBay as a peace officer from July 2006 to August 2013.  (Aff. of Louis Ginsberg ("Ginsberg Aff."), Ex. O ("Frias Dep.") at 11.)

Frias and Ramirez were members of the Police Benevolent Association ("PBA") during their employment at RiverBay.  (Frias Dep. at 12; Ramirez Decl. ¶ 3.)  Bell, Thomas, and Williams were members of the Office and Professional Employees International Union Local 153 ("Local 153").  (Bell Decl. ¶ 3; Thomas Decl. ¶ 3; Williams Decl. ¶ 3.)  The terms and conditions of the employment of RiverBay employees in the Local 153 and the PBA are governed by collective bargaining agreements ("CBAs") between these unions and RiverBay.  (See Feb. 24, 2014 Declaration of Christopher Smith ("Smith Decl."), Ex. A.)


B.

In this action, the named plaintiffs allege various violations of their rights to minimum wage and overtime compensation under the FLSA and the NYLL.

7

First, Frias, Ramirez, and Thomas claim that they were unlawfully provided overtime compensation in the form of compensatory time off ("comp time") in lieu of cash for time worked in excess of forty hours per week. (Am. Compl. ¶¶ 8, 10, 12, 30; see also Frias Dep. at 22; Ramirez Decl. ¶ 6; Thomas Decl. ¶ 6.)

Second, all five named plaintiffs claim that they earned premium "nighttime differential" pay for work performed during night shifts, and that the defendants improperly failed to incorporate this nighttime differential pay into their regular rates of pay when calculating their overtime wages. (Am. Compl. ¶¶ 8, 9, 12; see also Bell Decl. ¶ 9; Frias Dep. at 106; Ramirez Decl. ¶ 14; Thomas Decl. ¶ 17; Williams Decl. ¶ 9.)

Additionally, all five named plaintiffs allege various policies employed by the defendants to reduce impermissibly the plaintiffs' minimum wage and overtime compensation by under-counting the hours that they worked (the "under-counting claims").[1]  Thus, Bell alleges that the defendants under-counted the hours that she worked by rounding down her on-the-clock time when she clocked in more than three minutes late. (Am. Compl. ¶¶ 9, 25-26.)  Bell, Frias, Thomas, and Williams allege that they were asked to perform off-the-clock work before or after

_____

[1] The under-counting claims are not at issue in these motions.

8

their shifts were scheduled to begin.  (Am. Compl. ¶¶ 9, 10, 11, 12, 39-40.)  And similarly, Bell, Thomas, and Williams allege that they were asked to work during uncompensated meal breaks. (Am. Compl. ¶¶ 9, 10, 11, 37-38.)

C.

This lawsuit was filed on April 9, 2013.  The plaintiffs filed an Amended Complaint (hereinafter the "Complaint") on December 6, 2013.  On December 20, 2013, the Court granted the plaintiffs' motion for conditional certification of a collective action and Court-authorized notice pursuant to Section 216 of the FLSA.  (See Dec. 20, 2013 Hr'g Tr. at 59.)  The Court approved the final language for the notice in a Memorandum Opinion and Order dated January 30, 2014, and on February 20, 2014, the notice was sent to a list of approximately 1,700 potential plaintiffs that had been furnished by the defendants. The defendants filed the current motion to dismiss on January 27, 2014, the plaintiffs filed their motion for summary judgment on February 6, 2014, and the defendants filed their cross-motion for summary judgment on March 10, 2014.  The Court has jurisdiction over the plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367.

III.

Individual Defendant Peter Merola has moved to dismiss all claims against him on the basis that the plaintiffs have not adequately alleged that he is an "employer" under the FLSA or the NYLL.  The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  "An entity 'employs' an individual under the FLSA if it 'suffer[s] or permit[s]' that individual to work."  Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (quoting 29 U.S.C. § 203(g)).  For an individual to be an employer, there must be more than just "[e]vidence that [the] individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function. . . . Instead, to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment."  Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013).  "[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts."  Id. at 104 (citation and internal quotation marks omitted).  The Court of Appeals for the Second Circuit has established a four-factor test to

10

determine the "economic reality" of an employment relationship: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 105 (quoting Carter v. Dutchess Community Coll., 735 F.2d 8, 12 (2d Cir. 1984)); see also Leal v. Masonry Servs., Inc., No. 12cv588, 2013 WL 550668, at *2 (E.D.N.Y. Feb. 12, 2013) (applying the "economic reality" test in the context of a motion to dismiss).  This set of factors is intended to be "nonexclusive and overlapping," and the factors are to be applied so as "to ensure that the economic realities test . . . is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA."  Irizarry, 722 F.3d at 105 (citation and internal quotation marks omitted).[2]

---

[2] The definition of "employer" under the NYLL is "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer."  N.Y. Lab. Law §§ 190(3) & 651(6).  The New York Court of Appeals has not yet answered the question of whether the test for "employer" status is the same under the FLSA and the NYLL, see Irizarry, 722 F.3d at 117, but courts have generally assumed that it is.  See Sethi v. Narod, -- F. Supp. 2d. --, 2013 WL 5453320, at *23 (E.D.N.Y. 2013); Chu Chung v. New Silver Palace Rests., Inc., 272 F. Supp. 2d 314, 318 n.6 (S.D.N.Y. 2003).  The defendants argue that Merola fails to satisfy the definition of "employer" under the NYLL for the same reasons that he cannot be an "employer" under the FLSA, and the

Merola is employed at RiverBay as Director of Finance and head of the Payroll Department, which is responsible for "process[ing] the payroll for all . . . employees on a weekly basis," as well as "applying the work rules for RiverBay's union and non-union employees."  (Am. Compl. ¶ 43.a.)  The plaintiffs allege that as Director of Finance, Merola has "the power to control RiverBay's wage policies, employee work schedules, and employees' rate of pay," and that he "plays a leading role in developing and modifying payroll practices and policies for RiverBay and its employees."  (Am. Compl. ¶¶ 43 & 43.b.)  As examples of this control, the plaintiffs allege that Merola:

- "signs and authorizes employee requests for overtime and compensatory time";

- has "attended a meeting to review and ultimately terminate RiverBay's compensatory time policy";

- has "discussed with Defendants' attorneys RiverBay's policy not to include a nighttime premium in employee's overtime rate of pay and concurred with Defendants' decision not to change the policy even though [he] kn[ew] from his research that the policy violates applicable FLSA and New York Labor Code regulations";

- was "involved in setting up RiverBay's time-keeping system whereby employees are docked for arriving after their shifts are scheduled to begin";

---

plaintiffs have not proffered any reason why the FLSA and NYLL claims against Merola should not stand or fall together. Accordingly, the Court's resolution of Merola's motion to dismiss the FLSA claims is also dispositive of his motion to dismiss the NYLL claims.

- and "responds to Board of Director inquiries regarding payroll issues and wages."

(Am. Compl. ¶¶ 43.d-i.)

Taken as true, these allegations are sufficient to establish that Merola possesses control over RiverBay's actual operations in a manner that relates to the plaintiffs' employment. Merola satisfies factors two and three of the "economic reality" test by participating in the development and implementation of payroll practices and exercising authority over the approval of overtime and comp time payments. See Irizarry, 722 F.3d at 115 ("[A] key question is whether the defendant had the authority to sign paychecks throughout the relevant period . . . ." (citation omitted)); Perez v. Westchester Foreign Autos, Inc., No. 11cv6091, 2013 WL 749497, at *8 (S.D.N.Y. Feb. 28, 2013) (emphasizing that the "Plaintiffs have . . . alleged that the [individual defendants] have input and control over the policies and practices of [the employer entities]" in finding the "economic reality" test satisfied). It is also significant that Merola is alleged to have known that the allegedly offending payroll practices violated the FLSA and the NYLL and failed to take corrective action. See Perez, 2013 WL 749497, at *8. Moreover, Merola's involvement in the implementation of one of the allegedly unlawful timekeeping systems and in the approval of compensatory time links his

13

control over RiverBay operations directly to the circumstances
of the plaintiffs' employment that gave rise to various claims
in this action.  Merola therefore exercises operational control
"in a manner that relates to [the] plaintiff[s'] employment."
Irizarry, 722 F.3d at 109.  For these reasons, Merola satisfies
the definition of "employer" under the FLSA for purposes of
individual liability, and his motion to dismiss the claims
against him must be denied.[3]

---

[3] The defendants argue that the plaintiffs have relied
exclusively on Merola's job title, without alleging how his
authority relates to the plaintiffs' employment.  However, given
the allegations that Merola participated in developing and
implementing payroll policies at RiverBay, including the
allegedly offending policies that gave rise to this action, this
argument is without merit.  The defendants also argue that the
plaintiffs have failed to allege direct contact between Merola
and any individual plaintiff, and that for this reason they have
failed to plead individual liability—but this is not a
requirement.  As the Court of Appeals emphasized in Irizarry,
operational control of the company's employment of the plaintiff
employees "does not mean that the individual 'employer' must be
responsible for managing plaintiff employees—or, indeed, that he
or she must have directly come into contact with the plaintiffs,
their workplaces, or their schedules . . . ."  722 F.3d at 110;
see also Leal, 2013 WL 550668, at *4.  Rather, a plaintiff must
allege "operational control" that "directly affect[s] the nature
or conditions of the employees' employment."  Irizarry, 722 F.3d
at 110.  The allegations in the Complaint satisfy this standard.

IV.

The defendants have moved to dismiss the plaintiffs' comp

time and nighttime differential claims on the ground that they

are preempted under § 301 of the LMRA.  They have also moved, in

the alternative, for summary judgment on these claims.[4]  Section

301 of the LMRA "governs actions by an employee against an

employer for breach of a collective bargaining agreement."

Dougherty v. American Tel. & Tel. Co., 902 F.2d 201, 203 (2d.

Cir. 1990).  Section 301 preempts state-law claims that require

interpretation of an underlying CBA.  Lingle v. Norge Div. of

Magic Chef, Inc., 486 U.S. 399, 413 (1988).  Similarly, § 301

precludes claims under the FLSA that involve interpretation of a

CBA.  See Johnson v. D.M. Rothman Co., 861 F. Supp. 2d 326, 332

(S.D.N.Y. 2012) (collecting cases).  However, "not every dispute

concerning employment, or tangentially involving a provision of

a collective-bargaining agreement, is pre-empted by

_____

[4] The defendants' summary judgment motion is presented as an
alternative basis for relief in the event that the Court deems
it necessary to consider documents in support of the defendants'
preemption arguments that it could not properly consider on a
motion to dismiss.  It is not necessary to consult any documents
to resolve either of the defendants' motions that could not
properly be consulted on a motion to dismiss.  Moreover, the
arguments in support of, and opposition to, a finding of
preemption do not differ between the summary judgment motion and
the motion to dismiss.  Thus, a single analysis resolves both
motions.

§ 301 . . . ." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985). The test for determining whether a claim is preempted by § 301 is "whether the [claim implicates] . . . rights [of] employers or employees independent of any right established by contract, or, instead, whether evaluation of the . . . claim is inextricably intertwined with consideration of the terms of the labor contract." Id. at 213.

The nighttime differential claims are based on the allegation that the plaintiffs received nighttime shift differential pay, and that the defendants improperly failed to take this shift differential into account when calculating the plaintiffs' overtime compensation as required under the FLSA and the NYLL. See Johnson, 861 F. Supp. 2d at 331 ("An employee's 'regular rate' of pay includes shift differentials." (collecting cases)). The defendants argue that the nighttime differential claims are preempted under § 301 because these claims cannot be resolved without interpreting the provisions of the CBAs that call for payment of a nighttime differential. The named plaintiffs in this action belonged to the PBA and the Local 153 during their employment at RiverBay, and the terms of their employment and compensation were therefore governed by the PBA and Local 153 CBAs. It is undisputed that these CBAs called for the payment of a nighttime differential for shifts worked during

16

designated nighttime hours.  (See Smith Decl., Ex. A, Local 153 CBA Art. XVI, Section 4; Ex. A, PBA CBA Art. 8(d).)[5]

The plaintiffs' nighttime differential claims are not precluded by Section 301 because these claims invoke statutory rights that are independent of the rights conferred on the parties by the CBAs.  The Complaint alleges that the defendants improperly calculated the plaintiffs' base rate of pay for determining their overtime compensation by failing to include the nighttime differential that the plaintiffs earned, and that this violates their right to overtime compensation under the FLSA and the NYLL.  The plaintiffs do not allege that the CBAs were breached or that the plaintiffs are owed any outstanding nighttime differential pay under the terms of the CBAs.  There is therefore no dispute about the parties' rights under the CBAs.  See Wynn v. AC Rochester, 273 F.3d 153, 158 (2d Cir. 2001) (rejecting a § 301 preemption argument because "there

_____

[5] The PBA and Local 153 CBAs are both contained within Exhibit A to the Declaration of Christopher Smith.  Prior versions of the CBAs for these unions, which govern some of the years in the time periods relevant to this action, are contained in elsewhere in the record, (see Decl. of Jonathan Bardavid ("Bardavid Decl."), Exs. 1 & 3), but their terms do not differ from the relevant terms of the CBAs in Exhibit A to the Declaration of Christopher Smith.  Thus, all cites to the CBAs reference the CBAs contained in Exhibit A to the Declaration of Christopher Smith, and the CBAs are hereinafter cited exclusively by their titles and article and section numbers.

[wa]s no genuine issue between the parties concerning interpretation of the CBA"); Johnson, 861 F. Supp. 2d at 333 ("Section 301 of the LMRA does not preempt or preclude Plaintiffs' overtime claims alleging failure to pay the night differential."); Isaacs v. Central Parking Sys. of N.Y., Inc., No. 10cv5636, 2012 WL 957494, at *5 (E.D.N.Y. Feb. 27, 2012) (rejecting a § 301 preemption argument because "[n]owhere in the operative complaint d[id the] Plaintiff allege a breach of the CBA, or that he [wa]s challenging any provision thereof"); Severin v. Project OHR, Inc., No. 10cv9696, 2011 WL 3902994, at *4 (S.D.N.Y. Sept. 2, 2011) (finding no § 301 preemption because "[n]o provision of the CBA need[ed] to be interpreted to decide . . . the[] statutory claims").  Thus, the plaintiffs' nighttime differential claims "will require only oblique, if any, reference to the CBAs," Isaacs, 2012 WL 957494, at *5, and they are therefore not preempted.

The defendants rely principally on Hoops v. Keyspan Energy, 794 F. Supp. 2d 371 (E.D.N.Y. 2011), for their position that the plaintiffs' nighttime differential claims are preempted.  The court in Hoops found preempted an FLSA nighttime differential claim closely analogous to the one at issue in this case.  See 794 F. Supp. 2d at 377, 379.  However, Hoops is distinguishable from this case in that Hoops presented a "threshold" dispute "as

to whether certain contractual shift differentials should have
been included in the Plaintiff's straight-time wage rate." Id.
at 378.  Resolution of this threshold factual question required
interpretation of the CBA, and the statutory component of the
claim therefore could not be reached until the contractual
component of the claim was resolved under the grievance
procedures in the CBA and the LMRA.  Id.  Here, by contrast,
there is no threshold dispute about whether the plaintiffs were
entitled to nighttime differentials under the CBAs because the
plaintiffs do not allege that they were underpaid under the
contracts.  Rather, they allege that they were paid as required
under the contracts, and that this triggered their right to
additional overtime compensation under the FLSA and the NYLL.
(See, e.g., Am. Compl. ¶¶ 3, 8, 9, 12.)  This makes Hoops and
other cases involving threshold breach-of-contract questions
distinguishable.  See, e.g., Salamea v. Macy's E., Inc., 426 F.
Supp. 2d 149, 155 (S.D.N.Y. 2006); Tand v. Solomon Schechter Day
Sch. of Nassau Cnty., 324 F. Supp. 2d 379, 383 (E.D.N.Y. 2004);
see also Allis-Chalmers, 471 U.S. at 211 ("[Q]uestions relating
to *what the parties to a labor agreement agreed*, and what legal
consequences were intended to flow *from breaches of that
agreement*, must be resolved by reference to uniform federal
law . . . ." (emphasis added)).  Where, as here, there is no

19

dispute as to whether a CBA was breached, there is no need to interpret the CBA, and there is therefore no § 301 preemption. See Wynn, 273 F.3d at 158; Isaacs, 2012 WL 957494, at *5; Severin, 2011 WL 3902994, at *4.

The defendants also assert that the plaintiffs' comp time claims are preempted, but they do not proffer any credible basis for treating the comp time claims differently from the nighttime differential claims for preemption purposes.  Ultimately, this position must fail for substantially the same reasons that the preemption argument with respect to the nighttime differential claims fails.  The plaintiffs claim that the defendants unlawfully provided them comp time in lieu of cash for time worked above forty hours in a given workweek.  There is no dispute that the Local 153 and PBA CBAs provide for the payment of comp time in lieu of cash, at the election of an individual employee, for "overtime hours" as that term is defined under the given CBA.  (See Local 153 CBA Art. V, Section 6; PBA CBA, Art. 7(f).)  None of the plaintiffs has alleged insufficient credit for comp time hours earned.  Rather, the plaintiffs with comp time claims allege that the provision of comp time was illegal under the FLSA and the NYLL because these statutes entitle them to cash payment for overtime hours.  There are no allegations that any provisions of the CBAs were breached, and there is no

threshold issue of contractual interpretation for the Court to resolve before reaching the plaintiffs' statutory claims.   Thus, resolution of the comp time claims will not require interpretation of the CBAs, and, accordingly, these claims are not preempted.[6]

For the foregoing reasons, the defendants are not entitled to dismissal under Rule 12(b)(6) or summary judgment under Rule 56(a) on the basis that the nighttime differential or comp time claims are preempted.   The defendants' motions to dismiss and for summary judgment on preemption grounds must therefore be denied.

---

[6] The defendants argue that resolution of the comp time claims will require fact-intensive inquiries into whether, under the terms of the CBAs, the plaintiffs were indeed undercompensated in any weeks in which they worked more than forty hours and received comp time in lieu of cash overtime payments, and that these inquiries will require interpretation of the CBAs, such that the statutory claims should be precluded under § 301.   This position is without merit because, as the Supreme Court has observed, the resolution of "purely factual questions about an employee's conduct or an employer's conduct and motives do[es] not require a court to interpret any term of a collective-bargaining agreement."   Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 262 (1994) (citation and internal quotation marks omitted).   The defendants do not point to any disputes between the parties as to the meaning of the CBAs, and they do not specifically identify any issues of contract interpretation for resolution.   Questions of fact regarding the pay records therefore have no bearing on the preemption analysis.

V.

The parties have cross-moved for summary judgment with respect to liability for the plaintiffs' comp time claims.[7] Plaintiffs Frias, Ramirez, and Thomas argue that they have established as a matter of law that the defendants unlawfully provided them with comp time in lieu of cash overtime pay in weeks when these plaintiffs worked more than forty hours. The defendants do not dispute that RiverBay had a policy of paying comp time in lieu of cash for certain overtime hours, nor do they dispute that it is unlawful to pay comp time in lieu of cash to a private-sector employee for time worked in excess of forty hours in a given week. They argue, instead, that the

---

[7] The plaintiffs have moved for summary judgment on the state- and federal-law-based comp time claims. The defendants oppose these motions and have cross-moved for summary judgment, but they have not proffered any arguments or cited any authorities that pertain specifically to the state-law claims. Indeed, neither party has provided any basis for treating the federal and state comp time claims differently, and there is no reason for doing so here. See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate *in the manner and methods provided in . . . section*[] 7 . . . *of . . . the Fair Labor Standards Act of 1938 . . . .*" (emphasis added)); cf., e.g., Eschmann v. White Plains Crane Serv., Inc., No. 11cv5881, 2014 WL 1224247, at *4, *14 (E.D.N.Y. Mar. 24, 2014) (treating federal and state overtime claims as analytically identical for summary judgment purposes); Perez v. G & P Auto Wash Inc., 930 F. Supp. 2d 423, 428-32 (E.D.N.Y. 2013) (same).

record does not support the inference that any of the plaintiffs received comp time in weeks in which they worked more than forty hours, and that even if it did, the plaintiffs' claims must fail because the record does not show that the plaintiffs are entitled to damages.

A.

"The FLSA generally provides that hourly employees who work in excess of 40 hours per week must be compensated for the excess hours at a rate not less than 1 ½ times their regular hourly wage." Christensen v. Harris Cnty., 529 U.S. 576, 578-79 (2000) (citing 29 U.S.C. § 207(a)(1)).  Section 207(o) permits states and their political subdivisions under certain circumstances to compensate their employees for time worked in excess of forty hours in a given week by paying them compensatory time at a rate of one and one half hours for every hour worked.  Id. at 579.  By contrast, the substitution of comp time for cash wages by private-sector employers is not expressly authorized, and courts have generally concluded that it is therefore not permitted.[8]  See, e.g., Tyo v. Lakeshore Hockey

---

[8] In a June 18, 2010 Opinion Letter, the New York State Department of Labor stated that in general under New York law, "an employee may not be given compensatory time in lieu of the payment of overtime . . . ."  N.Y. State Dep't of Labor, Opinion

23

Arena, Inc., No. 11cv6239, 2013 WL 1560214, at *3 (W.D.N.Y. Apr. 11, 2013); Pippins v. KPMG LLP, 921 F. Supp. 2d 26, 55 (S.D.N.Y. 2012), aff'd, -- F.3d --, 2014 WL 3583899 (2d Cir. 2014); Boyke v. Superior Credit Corp., No. 01cv290, 2006 WL 3833544, at *4 (N.D.N.Y. Dec. 28, 2006).

Plaintiffs Frias and Thomas have submitted weekly pay records indicating that they were provided comp time for hours worked in excess of forty in at least one given workweek. (See Mar. 28, 2014 Aff. of Matthew Cohen ("Cohen Aff. I"), Ex. A at 1; Thomas Decl., Ex. B at 1.) The defendants dispute that there is any proof in the record establishing that Frias and Thomas received comp time for time worked in excess of forty hours in any given week, but they do so only in general terms, and they offer no alternative reading of the pay records, no challenge to their authenticity or accuracy, and no countervailing evidence. These records are therefore uncontested support for Frias's and

---

Letter No. RO-09-0161, at 2 (June 18, 2010). Although the New York Court of Appeals has not had occasion to determine the permissibility of paying comp time in lieu of cash overtime under the NYLL, this administrative interpretation of the statute, combined with the general requirement under New York law that employers pay employees overtime compensation pursuant to the provisions of § 207 of the FLSA, see N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2, suggests that the New York courts would view the payment of comp time in lieu of cash overtime as unlawful—at least in the context of private-sector employment. The defendants have proffered no reason to believe otherwise.

Thomas's comp time claims, from which no reasonable inference can be drawn other than that these two plaintiffs were provided comp time in lieu of cash overtime for time worked in excess of forty hours in a given week.  This constitutes uncompensated overtime under the law, and Frias and Thomas are therefore entitled to summary judgment for liability on their FLSA and NYLL comp time claims.  See 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed.").

At argument, counsel for the plaintiffs conceded that the pay records provided by Ramirez do not show week-by-week data. (See May 8, 2014 Hr'g Tr. at 44.)  Rather, Ramirez's pay records show only the aggregate comp time that she accrued between April 1, 2007 and March 31, 2013.  (See Ramirez Decl. ¶ 8 & Ex. A.) Thus, in order to grant Ramirez's motion for summary judgment, the Court would have to rely primarily on her own assertion that "[w]hen [she] worked in excess of forty hours in a week, [she] received compensatory time off in lieu of overtime pay from Defendants."  (Ramirez Decl. ¶ 6.)  Without any direct support in the pay records, this conclusory testimony proffered by the

plaintiff herself is not enough to grant summary judgment in Ramirez's favor.[9]  See, e.g., Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (collecting cases that emphasize that except in rare instances, "[a]ssessments of credibility . . . are matters for the jury, not for the court on summary judgment").  Ramirez's motion for summary judgment on her comp time claims must therefore be denied.

On the other hand, Ramirez's assertion that she has been provided with comp time for time worked above forty hours in a given week is supported indirectly by evidence tending to prove the existence of comp time policies at RiverBay, (see, e.g., Ginsberg Aff., Ex. L at 39, 50-51, 53), and by Ramirez's aggregate pay records, which indicate that Ramirez accrued approximately four hundred hours of comp time between April 1, 2007 and March 31, 2013.  (See Ramirez Decl. ¶ 8 & Ex. A.) There is a genuine issue of fact as to whether this comp time was accrued in weeks in which Ramirez worked in excess of forty

---

[9] Ramirez also provides an aggregate number of comp time hours received over the course of six years of employment.  (See Ramirez Decl. ¶ 8 & Ex. A (395 hours between April 1, 2007 and March 31, 2013).)  However, without records indicating the specific weeks in which these comp time hours were earned, there remain material disputes of fact as to whether Ramirez earned comp time for weeks in which she worked fewer than forty hours, such as for weekend work.  (See PBA CBA Art. 7(d) & (f).)

hours.  Accordingly, the defendants' cross-motion for summary judgment on Ramirez's comp time claims must be denied.[10]

### B.

The defendants argue that the record shows that Frias and Ramirez were "cashed out" at the end of their tenure at RiverBay for all comp time hours that they had accrued, (see Duchnowski Decl. ¶¶ 26-27), and that these "cash out" payments should cancel the defendants' liability for any uncompensated overtime hours, thus entitling the defendants to summary judgment on Frias's and Ramirez's comp time claims.  In support of this position, the defendants cite two cases in which courts have ruled that for purposes of computing damages, any accrued comp time hours for which plaintiffs have been "cashed out" should be

---

[10] The defendants have asserted in passing in their papers that Ramirez was an exempt employee from April 1, 2007 to September 23, 2012.  To the extent that they argue that this is a basis for summary judgment on any of Ramirez's claims, this argument is without merit because there is no support anywhere in the record—aside from a conclusory assertion in the declaration of Kenneth Duchnowski, manager of accounting and auditing at RiverBay, (see Decl. of Kenneth Duchnowski in Supp. of Cross Mot. for Partial Summ. J. ("Duchnowski Decl.") ¶ 25)—for this affirmative defense, nor any indication in the defendants' briefs as to which exemption they believe should apply.  See Schwind v. EW & Assocs., Inc., 357 F. Supp. 2d 691, 697 (S.D.N.Y. 2005) ("The employer has the burden of proof to establish that the subject employee falls under any of the enumerated exemptions.").

subtracted from total damages.  See Lupien v. City of Marlborough, 387 F.3d 83 (1st Cir. 2004); Scott v. City of New York, 592 F. Supp. 2d 501 (S.D.N.Y. 2008).  The purpose of this rule, termed the "banked method" for computing damages, is to prevent plaintiffs from reaping a windfall at their employers' expense.  See Lupien, 387 F.3d at 90.

The defendants' reliance on cases applying the "banked method" for computing damages is misplaced.  In both Lupien and Scott, the availability to the employers of an offset for cashed-out overtime hours was a question of remedy, not liability.  See Lupien, 387 F.3d at 84, 88-89; Scott, 592 F. Supp. 2d at 503, 507.  Indeed, the court in Lupien was careful to note that "[t]he two questions of liability and remedy are analytically distinct," and that "liability for unpaid overtime is incurred by an employer when overtime is not paid by the first payday after the amount of overtime pay can be determined."  387 F.3d at 88-89 (citations omitted).  By contrast, the cross-motions for summary judgment at issue here concern liability, while the question of the proper damages in this action is not before the Court.  The defendants' reliance on the "banked time" principle adopted in Lupien and Scott is

therefore premature.[11]   See Saunders v. City of New York, 594 F. Supp. 2d 346, 361 n.106 (S.D.N.Y. 2008) ("Defendants urge that summary judgment should not be granted to the plaintiffs because they have already used awarded compensatory time and now seek a windfall.  This argument relates to damages, not liability.").

Instead, the present motions are governed by the well-recognized principle that statutory overtime liability accrues when a plaintiff works more than forty hours in a given week and is not paid overtime compensation for those hours on the regular payday following that workweek.  See Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013) ("[F]or a workweek longer than forty hours, an employee who works in excess of forty hours shall be compensated time and a half for the excess hours." (quoting 29 U.S.C. § 207(a)(1)) (internal quotation marks omitted)); Callari v. Blackman Plumbing Supply, Inc., -- F. Supp. 2d. --, 2013 WL 6795911, at *13 (E.D.N.Y. 2013) ("A cause of action under the Fair Labor

---

[11] Because the present motions concern liability, there is no occasion to determine whether the "banked time" principle adopted in Lupien and Scott—which involved public-sector employment governed by § 207(o)—would apply in this case—which involves only private-sector employment—if damages were at issue.  Compare Lupien, 387 F.3d at 90 (adopting the "banked method"), and Scott, 592 F. Supp. 2d at 507-08 (same), with Tyo, 2013 WL 1560214, at *3-6 (declining to reduce accrued comp time hours by the amount of comp time hours used during the course of employment).

Standards Act for unpaid minimum wages or unpaid overtime
compensation . . . accrues when the employer fails to pay the
required compensation for any workweek at the regular pay day
for the period in which the workweek ends." (citation omitted)).
It is of no moment for liability purposes that these plaintiffs
were later "cashed out," and the "cash out" payments therefore
have no bearing on the motions with respect to Frias's and
Ramirez's claims.

The defendants' position on the "cash out" payments does
not apply to Thomas, who remains employed at RiverBay and whose
comp time hours therefore undisputedly have not been "cashed
out."  (See Thomas Decl. ¶ 2.)  The defendants nevertheless
argue that Thomas's failure to establish that she did not *use*
the comp time hours paid to her in lieu of cash for overtime
hours is fatal to her claims because the *use* of a comp time hour
as compensated time off should be treated as the equivalent of a
"cash out" payment for a comp time hour at the end of
employment.  See D'Camera v. District of Columbia, 722 F. Supp.
799, 804 (D.D.C. 1989) ("The [defendant] was entitled to deduct
the monetary value of compensatory time used against the total
amount of overtime compensation earned during the period of
violation.").  For precisely the reasons that apply to the "cash
out" argument, this position is without merit.  Thomas's pay

records indicate that she accrued comp time in lieu of overtime
in at least one week during which she worked more than forty
hours, and there is no indication that she used these comp time
hours in that same week.  Thus, she accrued hours that were not
compensated at the statutorily required overtime rate in at
least one given week during which she worked more than forty
hours.  This is enough to establish liability.  Any dispute
about damages is not presently before the Court.[12]

C.

For the foregoing reasons, Plaintiffs Frias and Thomas are
entitled to summary judgment on liability for their comp time
claims and neither party is entitled to summary judgment with
respect to liability on Plaintiff Ramirez's comp time claims.

VI.

The parties have also cross-moved for summary judgment with
respect to liability on the plaintiffs' nighttime differential

---

[12] Damages are relevant for present purposes only to the extent
that a plaintiff is required to establish as an element of the
cause of action that the plaintiff worked "*some uncompensated
time* in excess of . . . 40 hours" in a given workweek.  Lundy,
711 F.3d at 114 (emphasis added); see also 29 U.S.C.
§ 207(a)(1).  Frias and Thomas have both met this standard.

claims.[13]  All five named plaintiffs assert that they have
established as a matter of law that the defendants failed to
include nighttime differential pay in their base rates of pay
when calculating the overtime pay that they were owed in weeks
when they worked more than forty hours.  The defendants oppose
these motions and have cross-moved for summary judgment on the
nighttime differential claims, arguing 1) that the plaintiffs
have not established that they received nighttime differential
pay in any given week in which they worked more than forty
hours, and 2) that even if the plaintiffs did earn nighttime
differential pay in weeks when they worked more than forty
hours, when various credits are taken into account, all
plaintiffs were in fact overpaid during each such week, and none
of the plaintiffs can therefore establish any overtime
liability.[14]

---

[13] These cross-motions purport to address nighttime differential
claims that arise under the FLSA and the NYLL, without
distinguishing between the two.  As with the comp time claims,
there is, except as otherwise indicated, no apparent basis for
treating the state and federal nighttime differential claims
differently.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-
2.2; see also Isaacs, 2012 WL 957494, at *4 (noting the
"parallel . . . requirements" under the FLSA and the NYLL with
respect to overtime claims based on failure to include shift
differentials in regular rates of pay).

[14] The plaintiffs argue that the defendants have waived their
right to assert a credits-based argument against liability on

A.

The FLSA and NYLL require that employers pay overtime for time worked over forty hours per week at a rate "not less than one and one-half times the regular rate of pay."  29 U.S.C. § 207(a)(1); see N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. When calculating an employee's "regular rate" of pay, an employer must generally include "all remuneration for employment," subject to certain exceptions.  29 U.S.C. § 207(e); see Isaacs, 2012 WL 957494, at *4.  "An employee's 'regular

these motions by failing to raise the argument as an affirmative defense in their Answer.  The plaintiffs have not cited any authority for the proposition that the defendants must raise this position as an affirmative defense in their pleadings, which is dubious in light of the well-recognized rule that a plaintiff must allege "40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours" as part of the plaintiff's affirmative case.  Lundy, 711 F.3d at 114.  In any event, the defendants raised their credits argument in opposing the plaintiffs' motion for summary judgment, which the plaintiffs elected to file before the defendants answered the Amended Complaint.  Moreover, any conceivable prejudice from the plaintiffs' lack of advanced warning that a credits argument would be raised was obviated when the Court extended the briefing schedule on these summary judgment motions in order to permit the plaintiffs to re-depose Kenneth Duchnowski, whose declaration is the sole support for the defendants' position on credits, and to file a supplemental reply brief explaining the significance of any testimony proffered during the deposition. See Schwind, 357 F. Supp. 2d at 698 ("Numerous courts have held that absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time." (collecting cases) (internal quotation marks omitted)).

rate' of pay includes shift differentials." <u>Johnson</u>, 861 F. Supp. 2d at 331 (collecting cases).

The defendants do not dispute that the failure to include nighttime differential pay in an employee's "regular rate" of pay for overtime purposes violates state and federal law. Instead, the defendants argue that nothing in the plaintiffs' submissions establishes that the plaintiffs earned nighttime differential pay in weeks in which they worked more than forty hours, and that the plaintiffs therefore have not proved any overtime liability.

With respect to Bell, Frias, Ramirez, and Williams, this argument is meritless in light of the declaration submitted in support of the defendants' motions by Duchnowski, manager of accounting and auditing at RiverBay, who affirms, on the basis of his review of the plaintiffs' pay stubs and "punch detail reports," that these plaintiffs received nighttime differential pay in at least one week within the applicable limitations periods during which they worked more than forty hours.  (<u>See</u> Duchnowski Decl. ¶¶ 5-10.)  Indeed, Duchnowski lists each specific week in which each of these plaintiffs worked more than forty hours and received nighttime differential pay.  It is undisputed that the nighttime differential pay to which Duchnowski attests was not included in these plaintiffs'

"regular rate" for overtime calculation purposes.  And, of
course, the defendants do not challenge the validity of
Duchnowski's affirmations or the authenticity or accuracy of the
records upon which they are based.  Thus, standing alone, these
affirmations would be a proper basis for summary judgment in
favor of Bell, Frias, Ramirez, and Williams.

                              B.

     Thomas is situated differently with respect to the proof
provided by Duchnowski.  Duchnowski's submissions show that
Thomas earned nighttime differential pay during the weeks of
August 18, 2007, August 25, 2007, and September 1, 2007.  (See
Duchnowski Decl. ¶ 9.)  These weeks are outside of the FLSA
limitations period.  See 29 U.S.C. § 255(a) (prescribing a
maximum limitations period of three years); Callari, 2013 WL
6795911, at *13 ("A cause of action under the Fair Labor
Standards Act . . . accrues when the employer fails to pay the
required compensation for any workweek at the regular pay day
for the period in which the workweek ends." (citation omitted)).
None of the pay records submitted by Thomas show that Thomas
received nighttime differential pay during any week within the
FLSA limitations period in which she worked more than forty
hours.  Thus, the principal basis for awarding Thomas summary

                              35

judgment on her FLSA nighttime differential claim is her own conclusory affirmation that she satisfies the legal standard. (See Thomas Decl. ¶ 17.)  This affirmation is not without support in the record: Thomas's aggregate pay records, which show that she earned a substantial amount of nighttime differential pay during the period between April 1, 2007 and March 31, 2013, support a plausible inference that Thomas worked forty hours and received nighttime differential pay during at least one week within the limitations period.  (See Thomas Decl., Ex. A.)  Nevertheless, given the absence of weekly pay records supporting Thomas's nighttime differential claim under the FLSA, the validity of the claim turns principally on her own credibility, and is therefore not appropriate to resolve on summary judgment.

By contrast, with respect to her nighttime differential claim under the NYLL, Thomas is situated identically to the four other named plaintiffs—Duchnowski's uncontested affirmation shows that Thomas worked more than forty hours and received nighttime differential pay in at least one week within the six-year limitations period under the NYLL.  See N.Y. Lab. Law § 663(3).  Standing alone, this would be a proper basis for summary judgment in Thomas's favor with respect to liability on her NYLL claim.

C.

The defendants argue that even taking into account the support in the record for the conclusion that the plaintiffs were *under*paid during weeks in which they worked more than forty hours and received nighttime differential pay, other data provided by Duchnowski indicates that all plaintiffs were in fact *over*paid during weeks in which they worked more than forty hours and received nighttime differential pay, and that the defendants are therefore entitled to summary judgment on all nighttime differential claims.

When an employer pays "extra compensation . . . by a premium rate . . . for certain hours worked by the employee in any day or workweek because such hours are hours worked . . . in excess of the employee's normal working hours or regular working hours," 29 U.S.C. § 207(e)(5), the extra compensation "shall be creditable toward overtime compensation" due under the statute. Id. § 207(h); see also Johnson, 861 F. Supp. 2d at 334; 29 C.F.R. § 778.202(b).  It is undisputed that both of the CBAs implicated in these motions provide for "premium" compensation for hours worked "in excess" of normal working hours.[15]

_____

[15] The Local 153 CBA provides for workdays of seven hours and workweeks of thirty-five hours, and for time-and-a-half pay for any hours worked in excess of this schedule.  (See Local 153 CBA Art. V, Sections 1 & 4.)  Moreover, this CBA provides for all

In his declaration, Duchnowski provides a chart in which he purports to show that in all weeks in which the plaintiffs worked more than forty hours and received nighttime differential pay, the plaintiffs received some form of compensation that should be credited against the liability for unpaid overtime that the defendants incurred in those weeks.  The defendants argue that taking these offsets into account, there is no single week in which any of the plaintiffs accrued uncompensated overtime, and therefore no basis for any nighttime differential claims.  The plaintiffs challenge Duchnowski's methods, and they argue that Duchnowski's calculations are too opaque to form a proper basis for crediting the defendants with the offsets they claim to be entitled to on these motions.  Because the issues raised with respect to credits differ somewhat by CBA, the PBA plaintiffs and Local 153 plaintiffs are addressed separately.

---

work performed on Saturdays to be compensated at one-and-one-half times the regular rate of pay, and for all work performed on Sundays to be compensated at twice the regular rate of pay. (See Local 153 CBA Art. V, Sections 2 & 3.)  The PBA CBA provides for eight-hour days and a forty-hour workweek, for time-and-one-half the regular rate of pay on Saturdays, and for double-and-one-half the regular rate of pay on Sundays.  (See PBA CBA Art. 7(a), (b), (d).)

1.

Duchnowski's calculations preclude a finding of summary judgment in favor of either party on any of the nighttime differential claims brought by Bell, Thomas, and Williams.  All three of these plaintiffs are members of the Local 153.  It is undisputed that the Local 153 CBA entitles these plaintiffs, under certain circumstances, to payments that are properly creditable against FLSA overtime liability under § 207(h).  These plaintiffs received premium pay for work in excess of thirty-five hours per week, work for which they would not be entitled to overtime pay under the FLSA to the extent it did not amount to more than forty hours for that week.  Thus, it is plausible that these plaintiffs received more compensation than they were required to receive in weeks in which they worked more than forty hours and received nighttime differential pay.  Accordingly, the summary judgment motions by Bell, Thomas, and Williams on their nighttime differential claims must be denied.

On the other hand, in order to grant summary judgment in favor of the defendants on these claims, the Court would have to credit Duchnowski's calculations—the validity of which the plaintiffs vigorously dispute—without having seen any of the records upon which they are purportedly based, and without any insight into many of the intermediate steps that they entailed.

39

Without providing any support for Duchnowski's conclusions—indeed, not even a sampling of the records on which they were based—the defendants effectively ask the Court to rely primarily on Duchnowski's credibility.  The question of how reliable Duchnowski's conclusions are is therefore an issue that it would be improper to resolve on summary judgment, and is more properly reserved for trial.  See Jeffreys, 426 F.3d at 553; cf. Virgin Atl. Airways Ltd. v. British Airways PLC, 69 F. Supp. 2d 571, 580 (S.D.N.Y. 1999) (refusing to take at face value an expert's calculations when the expert "cite[d] no supporting . . . data to convert his theorizing . . . into a factually-grounded opinion"), aff'd, 257 F.3d 256 (2d Cir. 2001).  This is especially true in light of the fact that there is no way to know, based on Duchnowski's submissions, what components of the plaintiffs' pay he construed as cognizable § 207(h) credits. Duchnowski was deposed on the subject of his calculations, but his answers do not provide any of the insight that is missing from his declaration and the attached calculations.  Ultimately, then, Duchnowski's opaque and unsupported calculations are an insufficient basis for summary judgment in the defendants' favor, and the defendants' motions for summary judgment dismissing the nighttime differential claims brought by Bell, Thomas, and Williams must therefore be denied.

2.

The parties agree that Plaintiffs Frias and Ramirez are situated differently from Bell, Thomas, and Williams with respect to the credits issue raised by the defendants.  Whereas Duchnowski's calculations show Bell, Thomas, and Williams to have been overcompensated in every week in which these plaintiffs received nighttime differential pay and worked more than forty hours, the calculations indicate that Frias and Ramirez were each undercompensated in at least one such week even when contractual premium-pay credits are taken into account.  The defendants argue that this is of no consequence, because Frias and Ramirez belong to the PBA, and the PBA CBA entitles PBA employees to a one-hour paid meal break during each workday.  (See PBA CBA Art. 7(b).)  According to the defendants, they are entitled to deduct the wages paid for these lunch breaks from their weekly overtime liability to Frias and Ramirez, and when these deductions are made, neither Frias nor Ramirez was underpaid for any overtime hours that are cognizable under the FLSA.

Ultimately, the differences between the PBA plaintiffs and the Local 153 plaintiffs have no bearing on the final disposition of the motions on the PBA plaintiffs' claims.  There is support for both parties' positions in Duchnowski's

calculations.  It is clear that Frias and Ramirez received nighttime differential pay during weeks in which they worked more than forty hours, but it is unclear whether the credits claimed by the defendants, especially the alleged meal break credits,[16] are sufficient to offset the alleged failure by the defendants to include nighttime differential pay in the calculation of overtime compensation in weeks in which the plaintiffs worked more than forty hours.  To resolve this uncertainty would require an assiduous analysis of Duchnowski's calculations, but Duchnowski has failed to provide the supporting documentation that would enable such an analysis. For this reason, summary judgment in favor of either party on Frias's and Ramirez's nighttime differential claims would be inappropriate.

D.

For the foregoing reasons, all motions for summary judgment on the plaintiffs' nighttime differential claims must be denied.

---

[16] The parties disagree about the extent to which the alleged meal break credits can be used to reduce the defendants' overtime liability, but neither party presents any cogent basis for crediting or discrediting Duchnowski's calculation of the amount of permissible credits in this case.

42

CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the reasons explained above, the defendants' motions under Rules 12(b)(6) and 56(a) to dismiss the comp time and nighttime differential claims on § 301 preemption grounds is **denied**, and Defendant Merola's motion to dismiss all claims against him is **denied.**  The motions by Plaintiffs Frias and Thomas for summary judgment with respect to liability on their comp time claims are **granted** and Williams's motion for summary judgment on her comp time claims is **denied.**  The defendants' cross-motions on all comp time claims are **denied.**  The motions by Plaintiffs Bell, Frias, Ramirez, Thomas, and Williams for summary judgment on their nighttime differential claims are **denied,** and the defendants' cross-motions for summary judgment on these plaintiffs' nighttime differential claims are **denied.**  The Clerk is directed to **close Docket Nos. 80, 87, and 118.**


**SO ORDERED.**

**Dated:**      **New York, New York**
            **August 1, 2014**            _____/s/_____
                                              **John G. Koeltl**
                                     **United States District Judge**