UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

ROSALY RAMIREZ, ET AL.,

                              Plaintiffs,          13 Civ. 2367 (JGK)

              - against -                          <u>OPINION AND ORDER</u>

RIVERBAY CORP., ET AL.,

                              Defendants.

────────────────────────────────────

JOHN G. KOELTL, District Judge:

     The plaintiffs bring this action under the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New
York Labor Law ("NYLL"), §§ 190 et seq. & 650 et seq., claiming
various violations of their right to receive a minimum wage and
overtime compensation.  The plaintiffs are current and former
hourly employees of RiverBay Corp. ("RiverBay").  On December
20, 2013, the Court granted the plaintiffs' motion for
conditional certification of a collective action pursuant to
Section 216(b) of the FLSA.  The plaintiffs now move for
certification of three proposed NYLL Subclasses pursuant to Rule
23 of the Federal Rules of Civil Procedure.  For the reasons
that follow, the plaintiffs' motion is granted.


                              I.

     The factual background and procedural history of this case
are set forth in the Court's Opinion and Order addressing the

defendants' motion to dismiss and the parties' cross-motions for summary judgment, which is being issued together with this Opinion.  Familiarity with that Opinion is assumed.  The following facts relevant to the present motion are undisputed unless otherwise noted.

A.

Named Plaintiffs Katherine Bell, Jonathan Frias, Rosaly Ramirez, Lorna Thomas, and Linda Williams are current and former hourly employees of RiverBay.  (Am. Compl. ¶¶ 8-12.)  Defendant RiverBay manages Co-Op City, which is the largest cooperative housing development in the world.  (Am. Compl. ¶ 14.)  Defendant Marion Scott is the exclusive property manager for all of RiverBay's residential and commercial properties.  (Am. Compl. ¶ 15.)  Individual Defendants Vernon Cooper and Peter Merola are RiverBay's General Manager and Director of Finance, respectively.  (Am. Compl. ¶¶ 17-18.)

In this action, the plaintiffs claim various violations of their rights to minimum wage and overtime compensation under the FLSA and the NYLL.  These claims fall into three categories: the plaintiffs allege that the defendants unlawfully provided compensatory time off in lieu of cash for overtime hours worked by the plaintiffs (the "comp time claims"); that the defendants unlawfully failed to incorporate a nighttime wage differential

in the plaintiffs' base pay when calculating the plaintiffs' overtime wages (the "nighttime differential claims"); and that the defendants impermissibly reduced the plaintiffs' compensation by under-counting the hours that the plaintiffs worked in various ways (the "under-counting claims").

B.

In moving for class certification, the named plaintiffs seek to represent three proposed Subclasses of current and former hourly employees at RiverBay who have claims for the unlawful deprivation of wages in violation of the NYLL.

Proposed Subclass 1 includes hourly employees at RiverBay who allege that they clocked in and began working before the start of their scheduled shifts, or continued to work after the end of their scheduled shifts and then clocked out late, and were not compensated for work performed during these on-the-clock off-schedule "gap" periods.[1]  These plaintiffs allege that

---

[1] In their papers, the plaintiffs defined Subclass 1 as consisting of "[c]urrent and former Riverbay Employees who have been denied compensation for work performed before and after their shifts."  (Pls.' Mem. in Supp. of Mot. for Class Certification at 2.)  However, the plaintiffs' arguments in support of certification of this Subclass make clear that this Subclass is intended to include only claims for on-the-clock work, and not claims for work performed before clocking in or after clocking out.  At oral argument, the plaintiffs agreed

RiverBay had a corporate policy of paying hourly employees according to their scheduled shifts even though the employees' payroll records indicated that they clocked in early or clocked out late, and that the deprivation of wages for hours earned during on-the-clock "gap" periods was unlawful under the NYLL.

Proposed Subclass 2 includes hourly employees at RiverBay who allege that they were provided overtime compensation in the form of compensatory time off ("comp time") in lieu of cash for time worked in excess of forty hours per week.  These plaintiffs allege that RiverBay had a corporate policy of permitting hourly employees to receive overtime compensation in the form of comp time, and that this policy is unlawful under the NYLL.

Finally, Proposed Subclass 3 includes hourly employees at RiverBay who earned premium compensation for work performed during night shifts ("nighttime differential" pay), and who allege that RiverBay had a policy of excluding this nighttime differential pay from their regular wages when calculating their overtime compensation, in violation of the NYLL.

---

that the definition of Subclass 1 should be revised to exclude off-the-clock claims.

C.

On December 20, 2013, the Court granted the plaintiffs'
motion for conditional certification of a collective action and
Court-authorized notice pursuant to Section 216 of the FLSA, 29
U.S.C. § 216.  (See Dec. 20, 2013 Hr'g Tr. at 59.)  The Court
approved the final language for the notice in a Memorandum
Opinion and Order dated January 30, 2014, and on February 20,
2014, the notice was sent to a list of approximately 1,700
potential plaintiffs that had been furnished by the defendants.
At the time the present motion was filed, ninety-six opt-in
plaintiffs had consented to joining the conditionally certified
collective action.  (Decl. of Wade C. Wilkinson in Supp. of
Pls.' Mot. for Certification of the N.Y. Subclasses ("Wilkinson
Decl.") ¶ 6.)

On January 27, 2014, the defendants moved to dismiss the
plaintiffs' federal and state comp time and nighttime
differential claims on the ground that they are preempted under
§ 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C.
§ 185(a), and to dismiss Defendant Merola from the action on the
ground that he is not individually liable under the FLSA or the
NYLL.  On February 6, 2014, Plaintiffs Frias, Thomas, and
Williams moved for summary judgment on their comp time claims,
and Plaintiffs Bell, Frias, Ramirez, Thomas, and Williams moved
for summary judgment on their nighttime differential claims.  On

March 10, 2014, the defendants cross-moved for summary judgment on these same claims.  In the accompanying Opinion, the Court denied the motion to dismiss, granted the summary judgment motions brought by Frias and Thomas for liability on their comp time claims, and denied all other summary judgment motions.  The plaintiffs filed the present motion for certification of three NYLL Subclasses on March 17, 2014.

II.

Before certifying a class, the Court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  See Fed. R. Civ. P. 23(a); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 202-03 (2d Cir. 2008); In re Initial Pub. Offerings Sec. Litig. ("In re IPO "), 471 F.3d 24, 32 (2d Cir. 2006).  The Court must find, more specifically, that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  The Court must also find that the class qualifies under one of

6

the three sets of criteria set forth in Rule 23(b).  See Amchem
Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997); Teamsters,
546 F.3d at 203; In re IPO, 471 F.3d at 32.

The plaintiffs here seek certification under Rule 23(b)(3),
which provides for a class to be maintained where "the questions
of law or fact common to the class members predominate over any
questions affecting only individual members, and . . . a class
action is superior to other available methods for fairly and
efficiently adjudicating the controversy."  Fed. R. Civ. P.
23(b)(3); see also Comcast Corp. v. Behrend, 133 S. Ct. 1426,
1431 (2013).  If the requirements of 23(a) have been met, and
the claims fall within the scope of Rule 23(b)(3), a court may,
in its discretion, certify the class.  See In re IPO, 471 F.3d
at 41 ("[A] district judge may certify a class only after making
determinations that each of the Rule 23 requirements has been
met.").

"Rule 23 does not set forth a mere pleading standard.  A
party seeking class certification must affirmatively demonstrate
his compliance with the Rule—that is, he must be prepared to
prove that there are in fact sufficiently numerous parties,
common questions of law or fact, etc."  Wal-Mart Stores, Inc. v.
Dukes, 131 S. Ct. 2541, 2551 (2011).  Plaintiffs seeking class
certification bear the burden of demonstrating by a
preponderance of the evidence that the proposed class meets each

of the requirements for class certification set forth in Rule 23.  Teamsters, 546 F.3d at 202.  When assessing whether plaintiffs have met this burden, courts must take into account "all of the relevant evidence admitted at the class certification stage."  In re IPO, 471 F.3d at 42.  A court may certify a class only after determining that "whatever underlying facts are relevant to a particular Rule 23 requirement have been established."  Id. at 41.  "[T]he obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue," although a court "should not assess any aspect of the merits unrelated to a Rule 23 requirement."  Id.; see also Mazzei v. Money Store, 288 F.R.D. 45, 54-55 (S.D.N.Y. 2012).

In ruling on a motion for class certification, "[c]ourts have discretion to create additional classes or split a class into subclasses . . . ."  Mazzei, 288 F.R.D. at 56 (citations omitted).  When exercising its discretion to certify subclasses, a court must assure itself that each subclass independently meets the requirements of Rule 23.  Id.; Burka v. N.Y. City Transit Auth., 110 F.R.D. 595, 601 (S.D.N.Y. 1986).

Where, as here, a collective action under the FLSA involves claims under the NYLL, "courts in the Second Circuit routinely certify class actions . . . so that New York State and federal wage and hour claims are considered together."  Damassia v.

Duane Reade, Inc., 250 F.R.D. 152, 163 (S.D.N.Y. 2008)
(collecting cases); see also Lee v. ABC Carpet & Home, 236
F.R.D. 193, 202-03 (S.D.N.Y. 2006) ("[W]here a collective action
under the FLSA that is based on the same set of facts has been
approved, there is an inclination to grant class certification
of state labor law claims." (citing Ansoumana v. Gristede's
Operating Corp., 201 F.R.D. 81, 86 (S.D.N.Y. 2001)).

III.

The plaintiffs' first proposed Subclass is defined to
include current and former RiverBay employees who have been
denied compensation for work performed after clocking in but
before the start of a scheduled shift, or after the end of a
scheduled shift but before clocking out.  The defendants argue
that certification of this Subclass should be denied because
this Subclass does not meet the commonality or typicality
requirements of Rule 23(a)(2) and (3), and because the
plaintiffs cannot demonstrate that common questions of law or
fact predominate over individualized inquiries that would be
required to establish liability and damages for the plaintiffs'
schedule-based pay claims, such that the predominance
requirement of Rule 23(b)(3) is not satisfied.

A.

The numerosity requirement of Rule 23(a)(1) is presumed
satisfied for classes with more than forty members.  See Consol.
Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.
1995).  Here, the total number of plaintiffs in all three
subclasses is approximately 1,700.  The plaintiffs assert that
Subclass 1 consists of more than forty members, (see Wilkinson
Decl. ¶ 6), and the defendants do not oppose certification of
Subclass 1 on the ground that the numerosity requirement is not
satisfied.  Accordingly, the Court concludes that Subclass 1 is
sufficiently large to satisfy the numerosity requirement of Rule
23(a)(1).  See Katz v. Image Innovations Holdings, Inc., No.
06cv3707, 2010 WL 2926196, at *3 (S.D.N.Y. July 22, 2010).


B.

Rule 23(a)(2) requires a showing that "there are questions
of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).
To satisfy the commonality requirement, class members' claims
must "depend upon a common contention," and the common
contention "must be of such a nature that it is capable of
classwide resolution."  Dukes, 131 S. Ct. at 2551.  The
plaintiffs contend that RiverBay has a corporate policy of
paying all hourly employees according to their scheduled shifts,
rather than their on-the-clock hours, and that this policy

10

routinely deprives the plaintiffs of compensation for work performed after clocking in but before the start of a shift, or work performed after the end of a shift but before clocking out. The plaintiffs argue that a determination of the existence of this policy will facilitate the classwide resolution of the schedule-based pay claims under the NYLL.

"To establish liability under the . . . NYLL on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Eschmann v. White Plains Crane Serv., Inc., No. 11cv5881, 2014 WL 1224247, at *4 (E.D.N.Y. Mar. 24, 2014) (citation and internal quotation marks omitted).  In general, the NYLL incorporates the overtime requirements of the FLSA.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  The FLSA requires that for a workweek longer than forty hours, an employee who works in excess of forty hours must be compensated time and a half for the excess hours.  See 29 U.S.C. § 207(a)(1).

The record on this class certification motion strongly supports the existence of a policy at RiverBay of paying employees only for their scheduled shifts when payroll records indicate that the employees worked longer than their scheduled shifts.  (See, e.g., Wilkinson Decl., Ex. D at 27-28, Ex. E at 116-17.)  This alleged policy is the cause of the injuries

11

alleged in Subclass 1, and its establishment on the merits is
therefore "at the 'core' of the cause of action alleged" by the
Subclass members.  Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113,
127 (S.D.N.Y. 2011).  Moreover, it is undisputed that payroll
records would enable a comparison between hours spent on the
clock and hours that were actually compensated.[2]  Thus, for a
given plaintiff, determining when application of the alleged
schedule-based pay policy resulted in overtime liability for
time worked in excess of forty hours in a given workweek would
be largely a matter of arithmetic, with inputs from the payroll
records.  For these reasons, the establishment of the alleged
RiverBay-wide schedule-based pay policy would carry the
litigation of the claims at issue in Subclass 1 a significant
step toward its resolution.  See Dukes, 131 S. Ct. at 2551
(noting that for commonality purposes, a "common question" must
be able "to generate common answers apt to drive the resolution
of the litigation").  The common contention of a classwide
policy of denying compensation for pre- and post-shift on-the-

---

[2] For this reason, the defendants' reliance on cases denying
certification of classes of plaintiffs asserting *off*-the-clock
claims is misplaced.  See, e.g., Fernandez v. Wells Fargo Bank,
N.A., No. 12cv7193, 2013 WL 4540521, at *5-8 (S.D.N.Y. Aug. 28,
2013).  The claims at issue in Subclass 1 are exclusively for
*on*-the-clock work, which is memorialized on the payroll records
and can therefore be established with comparative ease.

clock work is therefore sufficient to satisfy the commonality requirement of Rule 23(a)(2) for Subclass 1.  Cf. Morangelli v. Chemed Corp., 922 F. Supp. 2d 278, 307-08 (E.D.N.Y. 2013); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012); Espinoza, 280 F.R.D. at 127.

While the defendants invoke Wal-Mart Stores, Inc. v. Dukes in opposing certification of Subclass 1, nothing about that case precludes a finding that the commonality requirement has been satisfied here.  The Supreme Court in Dukes concluded that the commonality requirement had not been satisfied in a class action brought by employees alleging employment discrimination under Title VII.  The Court found that the plaintiffs' claims did not rest upon a common contention capable of classwide resolution because the plaintiffs could not claim that a uniform employment policy was the cause of their injuries.  See 131 S. Ct. at 2554. The plaintiffs had alleged that their employer had a corporate policy of allowing discretion by local supervisors over employment decisions, and that supervisors had exercised this discretion in a discriminatory manner.  Id. at 2548.  The Court concluded that this was "just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it [wa]s a policy against having uniform employment practices."  Id. at 2554.  Thus, deciding the plaintiffs' claims would require analyzing the employment

decisions of individual managers in individual cases, and there was therefore no classwide answer as to why each plaintiff was a victim of discrimination.   Id.

Here, by contrast, the evidence points clearly to the existence of a corporate employment policy with an impact on employees across RiverBay.  RiverBay's payroll coordinator testified that RiverBay employees are "paid to schedule." (Wilkinson Decl., Ex. D at 27.)  The employee depositions submitted in connection with this motion indicate unanimously that the plaintiffs performed on-the-clock pre- and post-schedule work and were not paid for it, and many employees testified that they knew others who also performed uncompensated on-the-clock work.  (See, e.g., Decl. of Wade C. Wilkinson in Further Supp. of and in Reply to Defs.' Opp. to Pls.' Mot. for Certification of the N.Y. Subclasses ("Wilkinson Reply Decl."), Ex. N at 18, 21-22, 51, Ex. O at 60, Ex. P at 19-20; Wilkinson Decl., Ex. G at 92-93, Ex. H at 45-46, 83, 111-13, Ex. I at 38, 71, 73, 92, 102, Ex. J at 54-56, 64, 164-66, 225, 250, 256, Ex. K at 65-66, 69, 86, 89, Ex. Q at 75-77.)  The extent to which this uncompensated on-the-clock work was performed during weeks in which plaintiffs worked more than forty hours may require

individualized determinations,[3] but these determinations are likely to consist of mechanical calculations based on payroll records and undisputed employment policies at RiverBay.  See, e.g., Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 126 (S.D.N.Y 2014); In re U.S. Foodserv. Inc. Pricing Litig., No. 06cv1657, 2011 WL 6013551, at *16 (D. Conn. Nov. 29, 2011), aff'd, 729 F.3d 108 (2d Cir. 2013).  Moreover, it is axiomatic that "[t]he commonality requirement may be met when individual circumstances of class members differ," as long as class members' "injuries derive from a unitary course of conduct." Esponiza, 280 F.R.D. at 127 (citation omitted); see also Morangelli, 922 F. Supp. 2d at 308; Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 199 (S.D.N.Y. 2011).  Thus, courts addressing the commonality requirement after Dukes have typically held that the requirement is satisfied where employees claim that they were denied minimum wage or overtime compensation as a result of a corporate employment policy.  See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 252 (2d Cir. 2011); Espinoza, 280 F.R.D. at 127; Youngblood v. Family Dollar Stores, Inc., No. 09cv3176, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011); Ramos v. SimplexGrinnell LP, 796 F.

---

[3] Employee testimony indicates that it often was.  (See, e.g., Wilkinson Decl., Ex. I at 38, Ex. J at 250, Ex. K at 86.)

Supp. 2d 346, 355 (E.D.N.Y. 2011) (opinion of the Magistrate
Judge).  The evidence in this case supports the existence of a
RiverBay-wide payroll policy that was the reason for the
Subclass members' alleged injuries under the NYLL, and the
commonality requirement is therefore satisfied for Subclass 1.


                              C.

     Rule 23(a)(3) is satisfied when "the claims of the class
representatives [are] typical of those of the class, and . . .
when each class member's claim arises from the same course of
events, and each class member makes similar legal arguments to
prove the defendant's liability."  Marisol A. v. Giuliani, 126
F.3d 372, 376 (2d Cir. 1997).  "While it is settled that the
mere existence of individualized factual questions with respect
to the class representative's claim will not bar class
certification, class certification is inappropriate where a
putative class representative is subject to unique defenses
which threaten to become the focus of the litigation."  Gary
Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner &
Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) (citations
omitted).  The Supreme Court has emphasized that "the
commonality and typicality requirements of Rule 23(a) tend to
merge.  Both serve as guideposts for determining whether under
the particular circumstances maintenance of a class action is

                              16

economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Dukes, 131 S. Ct. at 2551 n.5 (citation omitted).

The defendants have not proffered any arguments that address specifically whether the typicality requirement is satisfied for Subclass 1.  To the extent that the defendants emphasize the individualized inquiries that may be necessary to establish liability and damages, any such inquiries do not defeat a finding that the named plaintiffs' claims are typical of those of the proposed Subclass.  See Espinoza, 280 F.R.D. at 128 ("[T]he minimum wage and overtime claims alleged by Plaintiffs are similar to those of the class members and arise from the same allegedly unlawful practices and policies . . . . Typicality is satisfied despite differences in damages arising from a disparity in injuries among the class members.").  Here, the named plaintiffs have testified that they were harmed by the conduct alleged to have injured the class, (see, e.g., Wilkinson Decl., Ex. I at 38, Ex. J at 250, Ex. K at 86), and the defendants have not indicated any specific factual defenses applicable to the named plaintiffs' claims that would be atypical of the class.  Accordingly, the typicality requirement is satisfied for Subclass 1.

D.

Adequacy under Rule 23(a)(4) consists of two requirements: "First, class counsel must be qualified, experienced and generally able to conduct the litigation.  Second, the class members must not have interests that are antagonistic to one another."  In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992) (citation omitted); see also Dukes, 131 S. Ct. at 2551 n.5 ("[T]he [adequacy] requirement . . . raises concerns about the competency of class counsel and conflicts of interest.").  The defendants do not challenge the adequacy of representation in this action, and there are no evident conflicts of interests in the Subclass.  Plaintiffs' counsel has pursued a number of similar actions and has vigorously litigated the action before this Court.  Accordingly, the adequacy requirement is satisfied for Subclass 1.  See Damassia, 250 F.R.D. at 158; In re Buspirone Patent Litig., 210 F.R.D. 43, 58 (S.D.N.Y. 2002).


E.

"Although it is not explicitly spelled out in Rule 23, courts have added an implied requirement of ascertainability with respect to the class definition."  Schear, 297 F.R.D. at 125 (citation and internal quotation marks omitted).  Under this requirement, a class must be identifiable before it may be

properly certified.  Id.  "An identifiable class exists if its members can be ascertained by reference to objective criteria." Id. (citation omitted).  Here, neither party has addressed the ascertainability requirement.  It is nevertheless clear that the members of Subclass 1 can be ascertained by reference to objective criteria, such as dates of employment and information from payroll records.  See, e.g., Morris v. Alle Processing Corp., No. 08cv4874, 2013 WL 1880919, *6-7 (E.D.N.Y. May 6, 2013).  Accordingly, the implied ascertainabiltiy requirement is satisfied for Subclass 1.


F.

    In addition to satisfying the Rule 23(a) prerequisites, the plaintiffs must show, pursuant to Rule 23(b)(3), "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).


1.

    The plaintiffs here argue that the predominance requirement is satisfied for Subclass 1 because the Subclass members have suffered the same injury under the NYLL resulting from the same

19

general policy, and any individualized determinations in the action will consist mainly of mechanical calculations that can be performed on the basis of payroll records, and will therefore not overwhelm the litigation.  The defendants argue that Subclass 1 does not satisfy the predominance requirement because individualized issues will predominate over classwide issues in the determination of liability and damages.  This is so, they argue, because it cannot be assumed that the time an employee spends "clocked in" is an accurate reflection of time spent "working" for purposes of overtime liability under the NYLL; thus, in order to establish liability and damages, the Court will have to conduct individualized, fact-specific inquiries into whether a given plaintiff was actually working during the time that plaintiff was on the clock.

For their position, the defendants rely primarily on Babineau v. Federal Express Corp., 576 F.3d 1183 (11th Cir. 2009).  Babineau involved claims by employees of Federal Express Corporation, Inc. ("FedEx") for breach of contract and unjust enrichment resulting from FedEx's alleged failure to pay its employees for "gap" periods—that is, periods between clocking in and the start of a scheduled shift, or between the end of a scheduled shift and clocking out.  576 F.3d at 1185, 1187-88. The district court had concluded that Rule 23(b)(3) was not satisfied because the record indicated a significant likelihood

that plaintiffs were not actually performing work-related duties
during "gap" periods—thus, a determination of liability would
depend upon individualized inquiries that were likely to
predominate over common questions.  See id. at 1192-93.
Although the claims at issue in Babineau were for breach of
contract, the plaintiffs had argued that the employment
contracts at issue incorporated state and federal law, including
federal regulations defining "hours worked" as "all periods in
which the employee is suffered or permitted to work whether or
not required to do so," and "time given by the employee to the
employer even though part of the time may be spent in idleness."
See id. at 1192 (quoting 29 C.F.R. §§ 4.178 & 778.223).

    The Court of Appeals for the Eleventh Circuit concluded
that even assuming the federal regulations promulgated under the
FLSA were applicable, there was a realistic likelihood based on
the record that individualized inquiries into whether a
plaintiff was working during "gap" periods would predominate
over classwide issues.  See id. at 1193-94.  In reaching this
conclusion, the Court of Appeals emphasized another federal
regulation that states: "In those cases where time clocks are
used, employees who voluntarily come in before their regular
starting time or remain after their closing time, do not have to
be paid for such periods provided, of course, that they do not
engage in any work."  Id. at 1193 (quoting 29 C.F.R.

§ 785.48(a)).  In light of this definition of "work," and "particularly in light of employee testimony regarding the various non-work-related activities that took place during the gap periods and the various personal reasons that employees listed for coming in early and staying late," the district court had not abused its discretion in denying class certification on Rule 23(b)(3) grounds.  Id. at 1192-93.

The defendants argue that here, as in Babineau, individualized inquiries into whether a given plaintiff was working during on-the-clock pre- and post-shift "gaps" will predominate over classwide issues.  However, the conclusions reached in Babineau are not persuasive in this case.  The court in Babineau affirmed the denial of class certification because "[e]ven if FedEx policies pressured some employees to arrive early or stay late, it [wa]s clear from the record that other employees did so voluntarily and for purely personal reasons," and therefore not all on-the-clock time indicated in the payroll records would have been compensable under the employment contracts.  Id. at 1193.

In this case, by contrast, the record supports the conclusion that the plaintiffs were working during pre- and post-shift on-the-clock "gaps."[4]  All nine plaintiffs whose

---

[4] The defendants are correct that under Department of Labor regulations, employers who use time clocks are not required to

deposition transcripts were submitted in connection with this motion testified that they perform work-related duties when they clock in early or clock out late.[5]  (See, e.g., Wilkinson Decl., Ex. G at 19-20, 23, 27, Ex. H at 45-46, Ex. I at 48, 70, 77, Ex. J at 54, 165, Ex. K at 66, 82, 90, Ex. Q at 186; Wilkinson Reply Decl., Ex. N at 22, 119, Ex. O at 62, Ex. P at 54.)  Many plaintiffs testified that their employers had actual knowledge of this work, (see, e.g., Wilkinson Decl., Ex. G at 27, Ex. H at 62, Ex. K at 68-69, 111), and for other employees, constructive knowledge may suffice.[6]  See Kuebel v. Black & Decker, Inc., 643

---

pay "employees who voluntarily come in before their regular starting time or remain after their closing time, . . . provided, of course, that [the employees] do not engage in any work."  29 C.F.R. § 785.48(a).  However, there is ample evidence in this case that employees who come in before their shift times or stay after their shift times do indeed work in that period of time.

[5] The defendants argue that testimony from Plaintiffs Ramirez and Carmelo Perez that they were working during "gap" periods should be disregarded because these plaintiffs were classified as exempt employees during some of their employment at RiverBay, and they were therefore not paid on an hourly basis.  But regardless of any effect these employees' classification might have on their claims, their testimony that they and others performed work during pre- and post-shift "gaps" supports the assertion that work was routinely performed by employees at RiverBay during these periods.  (See, e.g., Wilkinson Decl., Ex. J at 54; Ex. Q at 75-76.)

[6] The defendants emphasize that employees working before and after scheduled shifts were often not required to do so, and sometimes even prohibited from doing so.  However, as the

F.3d 352, 361 (2d Cir. 2011) ("To establish liability under the
FLSA on a claim for unpaid overtime, a plaintiff must prove that
he performed work for which he was not properly compensated, and
that the employer had actual or constructive knowledge of that
work."); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2
(adopting the overtime standards applicable under the FLSA into
the NYLL overtime compensation requirements).  In addition to
these testifying plaintiffs, four other opt-in plaintiffs
submitted sworn declarations in which they attest that they
worked during pre- and post-shift "gap" periods, (see Wilkinson
Reply Decl., Ex. Q ¶¶ 5-6, Ex. R ¶¶ 5-7, Ex. S ¶¶ 5-7, Ex. T
¶¶ 5-7), and twenty-two additional opt-in plaintiffs submitted
responses to interrogatories in which they attest that they
worked during pre- and post-shift "gap" periods.[7]  (See Wilkinson
Reply Decl., Ex. U.)

---

plaintiffs point out, this is not the end of the inquiry,
because "if an employer has knowledge that an employee is
working hours in excess of forty per week, [the employer] is
responsible for compensating that employee even where the
employer has not requested the overtime be performed or does not
desire the employee to work."  Torres v. Gristede's Operating
Corp., 628 F. Supp. 2d 447, 462 (S.D.N.Y. 2008) (citations and
internal quotation marks omitted).

[7] The defendants point to portions of some of the plaintiffs'
testimony in which these plaintiffs allegedly admit to not
having performed work during "gap" periods, (see Wilkinson
Decl., Ex. K at 86; Wilkinson Reply Decl., Ex. N. at 103-04, Ex.
O at 59, Ex. P at 19.)  Although this testimony provides some

Although individualized factual inquiries cannot be
avoided, the Court has a duty to assess all of the relevant
evidence admitted at the class certification stage and
to resolve factual disputes relevant to each of the Rule 23
requirements, In re IPO, 471 F.3d at 41-42, and unlike in
Babineau, the record here does not indicate a significant
likelihood that individualized factual inquiries into whether
individual plaintiffs were working during pre- and post-shift
"gaps" will overwhelm the classwide resolution of the claims in

---

support for the defendants' position, the defendants overstate
its significance.  All of these plaintiffs testified elsewhere
that they indeed worked during pre- or post-shift "gap" periods.
(See Wilkinson Decl., Ex. K at 90; Wilkinson Reply Decl., Ex. N
at 22, 119, Ex. O at 59-60, Ex. P at 19-20.)  The defendants
also emphasize a portion of the testimony of Herbert Freedman,
secretary of Defendant Marion Scott Real Estate, in which
Freedman stated that he has observed employees "punch in and
punch out based upon their own requirements, their own
needs. . . .  They go to the restroom, they then go to get their
bagel and coffee, they go shopping, they do whatever . . . ."
(Wilkinson Decl., Ex. P at 48-49.)  This, too, provides some
support for the defendants' position, but it does not refute the
plaintiffs' allegations that there was a regular pattern of
employees working during the periods in which they were on the
clock but outside their scheduled shifts.  Moreover, Freedman's
conclusory testimony is substantially outweighed by the specific
testimony from all nine testifying plaintiffs that work was
performed during "gap" periods, and by the attestations of
twenty-six other plaintiffs who affirm that they worked during
"gap" periods.

Subclass 1.[8]  Cf. Indergit v. Rite Aid Corp., 293 F.R.D. 632,
654-58 (S.D.N.Y. 2013) (finding the predominance requirement
satisfied for a class involving claims that employees were
misclassified as "exempt" under the NYLL, where, despite
differences in the work duties of the plaintiffs, there were
consistent patterns in the evidence, and the proposed class
members were uniformly treated as "exempt"); Whitehorn, 275
F.R.D. at 200 ("[P]redominance is not defeated by the fact that
potential plaintiffs worked at different restaurant locations
and in different categories of tipped positions where, as here,
Defendants admit that the pay policy was identical.").

    To the contrary, the record suggests that if the plaintiffs
succeed in demonstrating a corporate policy of routinely denying
RiverBay employees compensation for pre- and post-shift work,
the primary hurdle to recovery is likely to consist
predominantly of arithmetical calculations based on payroll

_____

[8] For the same reason, a second out-of-Circuit case cited by the
defendants, Cornn v. United Parcel Serv., Inc., No. C03-2001,
2005 WL 2072091, at *5 (N.D. Cal. Aug. 26, 2005), is
distinguishable.  The plaintiffs seeking class certification in
Cornn had brought claims for similar on-the-clock off-schedule
"gap" periods, and the court denied certification on Rule
23(b)(3) grounds.  In reaching this conclusion, the court found
that the record established that the plaintiffs had "perform[ed]
a variety of non-work-related tasks" during the "gap" periods.
2005 WL 2072091, at *5.  Moreover, there was only limited
evidence that work was actually performed at all during the
"gap" periods.  Id.

records and other documentary evidence.[9]  The plaintiffs have
therefore established by a preponderance of the evidence that
classwide issues will predominate over individualized inquiries,
and, accordingly, the predominance requirement is satisfied for
Subclass 1.  See, e.g., Shahriar, 659 F.3d at 253 ("If
Plaintiffs succeed in showing that the expediters, silver
polishers, coffee makers, and/or managers were not eligible to
receive tips under New York law, then each of the class
plaintiffs will likely prevail on his or her . . . claims,
although class plaintiffs' individualized damages will vary.");
Niemiec v. Ann Bendick Realty, No. 04cv897, 2007 WL 5157027, at
*12 (E.D.N.Y. Apr. 23, 2008) ("The issues raised by [the
overtime] claims are subject to generalized proof, and
predominate over individual issues such as the alleged exempt
status of the . . . class members or the swapping of weekend
schedules by class members . . . ."); Noble v. 93 Univ. Place
Corp., 224 F.R.D. 330, 345 (S.D.N.Y. 2004) (finding the
predominance requirement satisfied even though "determinations

---

[9] Indeed, to the extent that individualized factual inquiries are
necessary into whether plaintiffs were in fact working while
clocked in, these inquiries may be capable of resolution through
representative testimony or other means that will reduce their
burden on the classwide litigation.  See, e.g., Mendoza v. Casa
de Cambio Delgado, Inc., No. 07cv2579, 2008 WL 3399067, at *7
(S.D.N.Y. Aug. 12, 2008).

as to damages, exempt status, and alleged labor agreements w[ould] require individualized findings").

The defendants' conclusory invocation of the Supreme Court's recent decision in Comcast Corp. v. Behrend does not alter this result.  In Comcast, the Court warned that Rule 23(b)(3) is not satisfied when the plaintiffs' theory of damages is not directly linked to the plaintiffs' theory of liability, because in such cases, "individual damage calculations will inevitably overwhelm questions common to the class."  See 133 S. Ct. at 1433-35.  The relevance of the holding in Comcast outside the antitrust context is not yet clear,[10] but where, as here, damages can likely be proved by means of mechanical calculations of wages lost, Comcast poses no bar to a finding that predominance is satisfied.  See, e.g., Leyva v. Medline Indus., Inc., 716 F.3d 510, 513-14 (9th Cir. 2013); Schear, 297 F.R.D. at 126.  Here, the plaintiffs' theory of damages is consistent with their theory of liability, and computing damages is likely

---

[10] The applicability of Comcast may be limited in view of the fact that it was uncontested in the district court and in the Supreme Court that the plaintiffs were required to show "(1) that the existence of individual injury resulting from the alleged antitrust violation (referred to as 'antitrust impact') was 'capable of proof at trial through evidence that [was] common to the class rather than individual to its members'; and (2) that the damages resulting from that injury were measurable 'on a class-wide basis' through use of a 'common methodology.'" Id. at 1430 (alteration in original) (citation omitted).

to be a mere matter of arithmetic.  Thus, the concerns
articulated in Comcast are inapposite, and the predominance
requirement of Rule 23(b)(3) is satisfied for Subclass 1.


                              2.

     In order to satisfy Rule 23(b)(3), the plaintiffs must also
show "that a class action is superior to other available methods
for fairly and efficiently adjudicating the controversy."  Fed.
R. Civ. P. 23(b)(3).  Here, the defendants do not object to
class certification on superiority grounds, and it is clear that
a class action is the superior method for the fair and efficient
adjudication of the claims in Subclass 1.  The plaintiffs are
significant in number, and they are aware of no individual
actions with similar claims against the defendants here.  See
Katz, 2010 WL 2926196, at *6.  Moreover, the plaintiffs
plausibly represent that given the relatively small amounts
involved in the individual claims here, the likelihood is low
that the plaintiffs would pursue separate actions if
certification were denied.  See Iglesias-Mendoza v. La Belle
Farm, Inc., 239 F.R.D. 363, 373 (S.D.N.Y. 2007).  Accordingly,
the superiority requirement is satisfied for Subclass 1.  See
Damassia, 250 F.R.D. at 164.

G.

For the foregoing reasons, the requirements of Rule 23(a) and (b)(3) are satisfied for Subclass 1, and the plaintiffs' motion to certify this Subclass is therefore granted.

IV.

The plaintiffs have moved for certification of two additional proposed Subclasses.  Subclass 2 is defined to include current and former RiverBay employees who received comp time in lieu of cash for overtime hours, and Subclass 3 is defined to include current and former RiverBay employees who received premium "nighttime differential" pay for work performed during night shifts, and who allege that their overtime compensation was not upwardly adjusted to reflect the addition of this premium pay to their base compensation.  The defendants raise only two limited objections to the certification of these two Subclasses.  First, they argue that proposed Subclass 2 should not be certified because individualized issues with respect to liability and damages will predominate over classwide issues.  Second, they argue that proposed Subclass 3 does not satisfy the adequacy requirement because the named plaintiffs do not have valid nighttime differential claims, and because the named plaintiffs have brought other claims in addition to their nighttime differential claims.

A.

The plaintiffs represent that Subclasses 2 and 3 will
consist of more than forty members each, (see Wilkinson Decl.
¶ 6), and the defendants do not dispute this assertion.  Thus,
for the reasons that apply to Subclass 1, Subclasses 2 and 3
satisfy the numerosity requirement.  See Consol. Rail Corp., 47
F.3d at 483 (holding that numerosity is presumed satisfied when
a class consists of more than forty members); Katz, 2010 WL
2926196, at *3 (concluding that numerosity was satisfied on the
basis of undisputed representations that the class was
sufficiently large).


B.

With respect to Subclass 2, the plaintiffs contend that
RiverBay had a corporate policy of providing comp time in lieu
of cash for overtime hours, and that this raises a classwide
issue that satisfies the commonality requirement of Rule
23(a)(2).  The payment of comp time in lieu of cash wages for
hours worked in excess of forty in a given workweek is unlawful
under the NYLL.[11]  See N.Y. State Dep't of Labor, Opinion Letter
No. RO-09-0161, at 2 (June 18, 2010).  The record strongly

---

[11] Indeed, in the accompanying Opinion, the Court granted summary
judgment on liability for Plaintiffs Frias and Thomas on their
comp time claims under the FLSA and the NYLL.

supports the conclusion that RiverBay had a policy of paying
comp time in lieu of cash wages for overtime, and that this
policy applied across all departments at RiverBay.  (See, e.g.,
Wilkinson Decl., Ex. C at 39, Ex. D at 96, Ex. M at 9, Ex. O at
1, Ex. P at 40.)  Factual differences may exist as to how this
policy was implemented across departments and CBAs, but it is
nevertheless evident at this juncture that the payment of comp
time was controlled on a RiverBay-wide basis, (see Wilkinson
Decl., Ex. O at 1), and that the relevance of any factual
differences in the way the comp time policy was implemented can
be resolved by means of mechanical calculations based on payroll
records and the payroll policies memorialized in the applicable
CBAs.  See Schear, 297 F.R.D. at 126; Espinoza, 280 F.R.D. at
127 ("The commonality requirement may be met when individual
circumstances of class members differ . . . .").  Differing
factual circumstances do not preclude a finding of commonality
where, as here, the alleged injuries of the class members derive
from a unitary course of conduct alleged to have caused the
plaintiffs' injuries.  See Espinoza, 280 F.R.D. at 127.
Accordingly, the commonality requirement is satisfied for
Subclass 2.

     For similar reasons, the commonality requirement is
satisfied for Subclass 3.  The defendants do not dispute that
the failure to include premium pay, such as nighttime

differential pay, in an hourly employee's regular rate of pay
for purposes of calculating overtime liability would violate the
NYLL to the extent that this occurred for weeks in which an
employee worked more than forty hours.[12]   The record provides
reasonable support for the conclusion that RiverBay had a
corporate policy of calculating overtime pay without including
nighttime differential pay, and that this policy affected a
broad range of hourly employees across departments.   (See, e.g.,
Wilkinson Decl., Ex. C at 90-93, Ex. Q at 26; Wilkinson Reply
Decl., Ex. P at 38.)   There is a reasonable likelihood that this
policy was applied in weeks during which employees worked more
than forty hours, and the plaintiffs plausibly assert that once
this policy is established, determining weeks in which liability
accrued would be largely a matter of arithmetic.   (See, e.g.,
Wilkinson Decl., Ex. C at 97.)   The defendants argue that
individual differences exist among plaintiffs with respect to

---

[12] The FLSA requires that employers pay overtime at a rate "not
less than one and one-half times the regular rate of pay," 29
U.S.C. § 207(a)(1), and courts generally conclude that "[a]n
employee's 'regular rate' of pay includes shift differentials."
Johnson v. D.M. Rothman Co., 861 F. Supp. 2d 326, 331 (S.D.N.Y.
2012) (collecting cases).   In the absence of any argument to the
contrary, the NYLL may be assumed to incorporate these rules.
See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.   The Court
addressed the named plaintiffs' nighttime differential claims
under the FLSA and the NYLL in the accompanying Opinion, and the
parties' summary judgment motions were denied.

liability and damages because overtime policies differed by
department and CBA, but such differences do not defeat a finding
of commonality.  See Espinoza, 280 F.R.D. at 127.  Accordingly,
the commonality requirement is satisfied for Subclass 3.

C.

There is no indication in the record that the claims of the
named plaintiffs in Subclass 2 or 3 would hinge on issues or
defenses that would "threaten to become the focus of the
litigation," Gary Plastic Packaging Corp., 903 F.2d at 180
(citation omitted), and there is no express objection from the
defendants to certification of Subclasses 2 or 3 on typicality
grounds.  The defendants argue that the named plaintiffs in
Subclass 3 have failed to establish that they have valid
nighttime differential claims, and this argument could plausibly
be viewed as a challenge to typicality under Rule 23(a)(3).  See
Mazzei, 288 F.R.D. at 57-58 ("Under both the typicality and
adequacy prongs of Rule 23(a), a purported class representative
must have suffered the same injury as those people he or she
seeks to represent." (citation omitted)).  Nevertheless, the
argument is without merit.  Multiple named plaintiffs testified
that their overtime compensation did not reflect nighttime
differential pay that they had earned, (see, e.g., Wilkinson
Decl., Ex. H at 94-96, Ex. J at 261-62), and there is no basis

34

to assume that issues unique to these plaintiffs' claims would overwhelm the litigation.  For these reasons, the typicality requirement is satisfied for Subclasses 2 and 3.

### D.

As explained above, the record indicates that the first requirement under Rule 23(a)(4), adequacy of class counsel, is satisfied in this case.  The second requirement—that class members "not have interests that are antagonistic to one another," In re Drexel Burnham Lambert Grp., 960 F.2d at 291—is also satisfied for Subclasses 2 and 3.  The record indicates no evident conflicts of interest or any other reason to believe the named plaintiffs would not adequately represent the interests of the Subclasses.  The defendants argue that the named plaintiffs in Subclass 3 have interests antagonistic to the class members because they are asserting other claims in addition to their nighttime differential claims.[13]  However, the defendants do not explain why this would create a conflict of interest, and

---

[13] In their papers, which were submitted before the Court's decision on the parties' summary judgment motions, the defendants also argued that the adequacy requirement was not satisfied because the named plaintiffs in Subclass 3 have no valid nighttime differential claims, but the Court's decision denying the defendants' motion for summary judgment on the named plaintiffs' nighttime differential claims renders that argument moot.

nothing about the other claims at issue in this action suggests any such conflict.  Absent any evident conflict, the defendants' position is without merit.  Accordingly, Rule 23(a)(4) is satisfied for Subclasses 2 and 3.


                              E.

     The implied ascertainability requirement is also satisfied for Subclasses 2 and 3, because the members of these Subclasses can be ascertained by reference to the same sorts of objective criteria used to ascertain the members of Subclass 1.  See, e.g., Schear, 297 F.R.D. at 125; Morris, 2013 WL 1880919, *6-7.


                              F.

     The plaintiffs must also satisfy the Rule 23(b)(3) predominance and superiority requirements for Subclasses 2 and 3 in order for these Subclasses to be certified.


                              1.

     The defendants do not object to certification of Subclass 3 on predominance grounds.  They do argue, however, that Subclass 2 fails to meet the predominance requirement because differences in payroll policies across departments and CBAs will cause individualized issues to predominate over class issues.


                              36

With respect to Subclass 2, the predominance requirement is satisfied.  Liability on the comp time claims under the NYLL is likely to turn on the classwide issue of whether RiverBay had a corporate policy of paying comp time in lieu of cash wages for overtime hours.  If the plaintiffs establish that RiverBay had such a policy, determining whether this resulted in unpaid overtime liability under the NYLL is likely to involve little more than arithmetic.  Cf. Schear, 297 F.R.D. at 126. Regardless of how complicated or individualized the calculations become, such mechanical determinations will not overwhelm the litigation.  See, e.g., Whitehorn, 275 F.R.D. at 200 (finding the predominance requirement satisfied because "common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly" were not outweighed by "mechanical calculations" relating to overtime hours worked and wages due).  Accordingly, the predominance requirement is satisfied for Subclass 2.  See Shahriar, 659 F.3d at 253; Niemiec, 2007 WL 5157027, at *12; Noble, 224 F.R.D. at 345.

No challenge has been made to Subclass 3 on predominance grounds, and it is clear that Subclass 3 also satisfies this requirement.  The existence of a RiverBay-wide policy of excluding nighttime differential pay when calculating overtime liability is a substantial, classwide question that is at the crux of whether the defendants are liable on the nighttime

differential claims.  Individualized assessments of whether, and to what extent, application of this policy violated each plaintiff's rights under the NYLL will require little more than arithmetic, and can be made on the basis of payroll records. See Shahriar, 659 F.3d at 253; Schear, 297 F.R.D. at 126; Niemiec, 2007 WL 5157027, at *12; Noble, 224 F.R.D. at 345. Accordingly, Subclass 3 also satisfies the predominance requirement.

2.

Finally, the defendants do not object to certification on superiority grounds, and for the reasons applicable to Subclass 1, the superiority requirement is satisfied for Subclasses 2 and 3.  There is a significant number of plaintiffs in each class, there do not appear to be related individual actions pending, and there is a low likelihood that plaintiffs would pursue individual actions if certification were denied.  See Katz, 2010 WL 2926196, at *6; Damassia, 250 F.R.D. at 164; Iglesias-Mendoza, 239 F.R.D. at 373.

G.

For the foregoing reasons, the requirements of Rule 23(a) and (b)(3) are satisfied for Subclasses 2 and 3, and the

plaintiffs' motion to certify these Subclasses is therefore granted.


                              CONCLUSION

    The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the reasons explained above, the plaintiffs' motion for class certification is **granted**.  The Clerk is directed to **close Docket No. 129**.

    The plaintiffs should provide a proposed order for class notice by **August 15, 2014**.  The defendants may provide any objections and response by **August 29, 2014**.

**SO ORDERED.**

**Dated:**    **New York, New York**
             **August 1, 2014**       _____/s/_____
                                          **John G. Koeltl**
                                    **United States District Judge**


                                  39